2014 CO 27

**Ricky Cuong HOANG, Petitioner**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 12SC219**

Supreme Court of Colorado.

April 21, 2014

Attorney for Petitioner: Office of Alternate Defense Counsel, Kimberly K. Caster, Littleton, Colorado.

Attorneys for Respondent: John W. Suthers, Attorney General, Emmy A. Langley, Assistant Attorney General, Denver, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶1 Four armed men broke into a home, assaulted three people inside, and stole jewelry and cash at gunpoint. Prosecutors alleged that Ricky Hoang was the leader and tried him for his involvement in the home invasion robbery. Hoang was restrained with leg shackles during his jury trial, over his repeated objections. After the jury convicted him on more than twenty counts, Hoang appealed. Due to prolonged delay in producing the record, over three-and-a-half years passed from filing Hoang's appeal to

certifying the record with the court of appeals.

¶ 2 The court of appeals affirmed the manner in which the trial court permitted Hoang to be restrained during trial, because there was no evidence that any juror saw or heard the shackles and, consequently, no indication that their use undermined Hoang's presumption of innocence. The court of appeals further held that Hoang's rights to a meaningful and a speedy appeal were not violated because he could not demonstrate prejudice resulting from the delay or from errors or omissions in the record.[1]

¶ 3 We accepted certiorari to review two alleged errors. First, Hoang argues that the trial court erred by requiring him to be tried in leg shackles without a finding of specific necessity. Second, he claims that delays and deficiencies in producing the record violated his rights to a meaningful and a speedy appeal.[2]

¶ 4 We affirm the court of appeals' ruling that shackling Hoang at trial did not violate his due process right. Specifically, we hold that when the record does not show that restraints were plainly visible, the defendant must point to something in the record justifying an appellate court's reasonable inference that at least one juror saw or heard them. If a defendant fails to meet that burden, then the constitutional harmless error standard announced in *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), does not apply.

¶ 5 We also affirm the court of appeals' ruling on Hoang's rights to a meaningful and a speedy appeal. We hold that Hoang was not deprived of these rights because he was not prejudiced by deficiencies in the record or by the delay. In so holding, we address whether errors and omissions in the record prevented meaningful appellate review, and, for the first time when evaluating appellate delay, we apply the factors enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (describing four-factor test to assess trial delay).

¶ 6 We address each issue in turn.

## I. Shackling

¶ 7 The prosecution first raised the issue of shackling Hoang at trial during a pretrial motions hearing, concerned that visible restraints could raise "a lot of appellate issues." Although Hoang had been shackled in previous hearings after a conflict arose between two of his co-defendants, he argued that he had not been involved in that clash and therefore should not be forced to appear in restraints at trial. The trial court postponed its decision to give the sheriff's deputies time to speak with a superior officer regarding the appropriate level of security.

¶ 8 The issue remained unresolved on the first day of trial. Hoang appeared in leg shackles [3] that were potentially noticeable to a casual observer. Before the prospective jurors entered the courtroom for voir dire, Hoang objected to restraints as a due process violation. The judge replied, "Well, I've spoken with the deputies. They feel that it's necessary, and I'm going to defer to them."

¶ 9 Following this exchange, deputies shackled Hoang for the remainder of the eleven-day trial, over his objections that the shackles violated the presumption of innocence and his right to due process. The court of appeals affirmed the decision to restrain him, concluding that the trial court did not abuse its discretion because there

---

1. *People v. Hoang*, No. 06CA1518, 2012 WL 511537 (Colo.App. Feb. 16, 2012) (not published under C.A.R. 35(f)).

2. We granted certiorari to review the following issues:
   1. Whether petitioner's due process rights to a speedy and meaningful appeal have been violated due to the unreasonable delay in the preparation of transcripts and the significant omissions of trial exhibits.
   2. Whether the court of appeals erred in affirming petitioner's conviction when the trial court required him to stand trial in leg shackles without a finding of necessity.

3. In briefs to the court of appeals and to this court, Hoang suggests that he was forced to wear handcuffs at trial. However, the record does not support this contention. At trial, Hoang objected to "chains on the ankles" only. Although the parties use the terms "leg shackles," "ankle shackles," and "ankle chains" interchangeably, we refer to Hoang's restraints as leg shackles for the sake of consistency.

was no evidence that any juror saw or heard the shackles.

¶ 10 Hoang claims that his shackles were visible and audible to the jury, and he contends that the trial court erred by failing to make findings of fact and an individualized determination that it was necessary for him to be shackled at trial.

¶ 11 We begin with the standard of review before turning to a criminal defendant's due process right to be free from physical restraints visible to a jury. We then discuss *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), which applies constitutional harmless error review to a trial court's unjustified decision ordering a defendant to be shackled in a manner that is visible to jurors. We also consider other cases finding *Deck* inapplicable when no juror observed the defendant's restraints. We conclude that when the record does not show that restraints were plainly visible, the defendant must point to something in the record justifying an appellate court's reasonable inference that at least one juror saw or heard them. When a defendant fails to meet this burden, *Deck*'s heightened review is not implicated.

### A. Standard of Review

¶ 12 We review a trial court's decision to restrain a defendant for abuse of discretion. *Eaddy v. People*, 115 Colo. 488, 491, 174 P.2d 717, 718 (1946). Abuse occurs when a trial court's decision is "manifestly arbitrary, unreasonable, or unfair," or if a ruling is based on an erroneous view of the law. *People v. Voth*, 2013 CO 61, ¶ 15, 312 P.3d 144, 148 (internal quotations omitted).

### B. Due Process and Visible Restraints

¶ 13 "[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 544 U.S. at 629, 125 S.Ct. 2007 (observing that this prohibition has deep roots in the common law and now forms part of the federal due process guarantee). Shackling a defendant in the presence of a jury "under-

mines the presumption of innocence," "interfere[s] with a defendant's ability to participate in his own defense," and affronts the "dignity and decorum of judicial proceedings." *Id.* at 630–31, 125 S.Ct. 2007 (internal citations omitted). "The presumption of innocence requires the garb of innocence...." *Eaddy*, 115 Colo. at 492, 174 P.2d at 718. "[T]he sight of shackles and gags might have a significant effect on the jury's feelings about the defendant," and use of these techniques "arouses a feeling that no person should be tried while shackled and gagged except as a last resort." *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

¶ 14 The constitutional right to be free from visible restraints at trial is not absolute, however. Restraints may be justified to avoid a defendant's escape, to prevent trial disruptions, and to ensure the security of those in the courtroom. *Lucero v. Lundquist*, 196 Colo. 95, 97, 580 P.2d 1245, 1246 (1978); *accord Deck*, 544 U.S. at 633, 125 S.Ct. 2007. To preserve the rights of the accused, the United States Constitution prohibits the use of visible shackles absent a case-specific finding of special need. *Deck*, 544 U.S. at 626, 125 S.Ct. 2007.

### C. Burden of Proof as to Apparentness

¶ 15 To determine whether shackling Hoang at trial violated his due process right, we must first determine which party bears the burden of proof as to whether any juror saw or heard Hoang's restraints.

¶ 16 In the past, we have reviewed alleged shackling errors for harmlessness, requiring a defendant to show prejudice before a conviction will be reversed. *See Scott v. People*, 166 Colo. 432, 440, 444 P.2d 388, 392 (1968) (when a defendant appears before the jury in handcuffs, "it [is] reversible error only if it [is] shown to be unnecessary and prejudicial to the defendant").

¶ 17 This area of law has evolved since *Scott*, however, at least where visible restraints are concerned. In *Deck*, the Supreme Court held that "where a court, without adequate justification, orders the defen-

dant to wear shackles that will be seen by the jury," the heightened constitutional harmless error standard applies. 544 U.S. at 635, 125 S.Ct. 2007. The defendant need not demonstrate actual prejudice; instead, "[t]he State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" *Id.* (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *accord United States v. Wardell,* 591 F.3d 1279, 1293 (10th Cir.2009) (visible stun belt "triggers 'close judicial scrutiny'" (quoting *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976))). If restraints are apparent to jurors, the prosecution bears the burden to prove that the error did not affect the outcome of the trial. This is now settled law.

¶ 18 But which party bears the burden of proof to show whether a juror actually saw or heard the shackles when it's not obvious from the record that the shackles were observed? When presented with this question, most courts have not applied *Deck*'s constitutional harmless error standard unless there was evidence that at least one juror saw or heard the restraints, or that they were plainly visible. After all, in *Deck,* the defendant wore leg irons, handcuffs, and a belly chain during his sentencing by a jury; the record was clear that the restraints were plainly visible. And the Supreme Court made clear that its opinion concerned "visible shackles"—restraints that are "visible to the jury" and "will be seen by the jury"—because "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process." *Deck,* 544 U.S. at 624, 628, 635, 630, 125 S.Ct. 2007.

¶ 19 When the record shows that a trial court took reasonable measures to conceal a defendant's restraints from view, and there is no evidence that any juror saw the restraints, courts have declined to apply *Deck*'s constitutional harmless error standard. These reasonable measures may include hiding the defendant's leg shackles by "skirting" the tables of both the prosecution and the defense[4] or using restraints, such as leg braces, that are concealed beneath the defendant's clothing.[5]

¶ 20 Even when the record is less clear as to whether the trial court was successful in hiding a defendant's restraints from the jury, some courts have held that *Deck*'s heightened standard is not implicated. *See State v. Sparks,* 68 So.3d 435, 479–80 (La.2011) (holding that because the trial court "did not believe" that jurors saw defendant's ankle shackles under the table and there was no indication in the record that a juror "ever saw or could see the shackles," defendant's presumption of innocence was not violated); *see also State v. Johnson,* 148 N.M. 50, 229 P.3d 523, 533 (2010).

¶ 21 All of these courts implicitly placed the burden of proof as to visibility on the defendant by concluding that the evidence was insufficient to trigger the heightened *Deck* standard. Absent evidence that a juror observed the restraints, they hold that a trial court's error in shackling a defendant is harmless. *See Ochoa v. Workman,* 669 F.3d 1130, 1145 (10th Cir.2012); *see also Letner,* 112 Cal.Rptr.3d 746, 235 P.3d at 107.

¶ 22 Only the Fifth Circuit has directly addressed the question of which party bears the burden of proof as to visibility, and the court placed the burden on the prosecution. In *United States v. Banegas,* the court held that when a defendant is erroneously shackled and there is a question as to whether the defendant's restraints were visible to the jury, the government has the burden of proving beyond a reasonable doubt that the jury did not see the restraints. 600 F.3d 342, 347 (5th Cir.2010). The Fifth Circuit reasoned that, according to *Deck,* "when no reasons are given by the trial court, and it is not apparent that shackling is justified, the defendant need not demonstrate actual prejudice on appeal to make out a due process

---

4. *See United States v. Cooper,* 591 F.3d 582, 588 (7th Cir.2010); *Mendoza v. Berghuis,* 544 F.3d 650, 654 (6th Cir.2008); *United States v. Salehi,* 187 Fed.Appx. 157, 173 (3d Cir.2006); *United States v. Baker,* 432 F.3d 1189, 1241 (11th Cir. 2005).

5. *See Wardell,* 591 F.3d at 1296 (10th Cir.2009); *State v. Dixon,* 226 Ariz. 545, 250 P.3d 1174, 1181 (2011); *People v. Letner,* 50 Cal.4th 99, 112 Cal.Rptr.3d 746, 235 P.3d 62, 106 (2010).

violation." *Id.* at 345. To hold otherwise, the court concluded, would "significantly alter the burden of proof articulated in *Deck*." *Id.* at 347.

¶ 23 In our view, the *Banegas* analysis mischaracterizes *Deck*'s holding. *Deck* explicitly stated that "where a court, without adequate justification, orders the defendant to wear shackles *that will be seen by the jury,* the defendant need not demonstrate actual prejudice to make out a due process violation." 544 U.S. at 635, 125 S.Ct. 2007 (emphasis added). By its own terms, *Deck*'s heightened standard applies to *visible* shackling, and in *Banegas,* the record was ambiguous as to whether the defendant's leg irons were visible to the jury during trial. *Banegas,* 600 F.3d at 346.[6]

▪▪ ¶ 24 We agree with the majority of courts that *Deck*'s heightened constitutional standard is applicable only when there is evidence that jurors observed the restraints or that they were plainly visible. It is the defendant who asserts that shackling violated his due process right; therefore, it is the defendant who must demonstrate visibility. We hold that when the record does not show that restraints were plainly visible, the defendant must point to something in the record justifying an appellate court's reasonable inference that at least one juror saw or heard them. Hoang has the burden here.

### D. The Trial Court's Measures to Conceal the Shackles

¶ 25 The record shows that the trial court took affirmative steps to prevent jurors from seeing Hoang's shackles. On the first morning of trial, proceedings began in a downstairs courtroom large enough to accommodate the entire pool of prospective jurors. Hoang repeated his objection to wearing shackles at trial. The judge considered fitting Hoang with a "shock belt," but the deputies believed the resulting "huge lump" on his back would be more conspicuous than leg shackles. The court rejected this option. As to the shackles that Hoang was wearing, the court stated, "[The jury] can't see this. They don't know it's there." The court continued, "I'm trying to do the least obtrusive manner that I can and still satisfy these deputies' security concerns." Further, it is apparent that the court was monitoring the situation, because, after the venire was excused for lunch, the judge stated, "I don't think that anyone actually noticed [the shackles]."

¶ 26 That afternoon, shackling came up again when the court reconvened in a different courtroom, where smaller groups of venire members were scheduled to arrive every hour. During a recess, defense counsel had examined the new courtroom to assess the visibility of the shackles. They determined that anyone entering through the main door or seated on the prosecution's side of the room would be able to see the restraints. Court staff confirmed the shackles' potential visibility. The trial court decided that the clerk should gather the venire members outside the courtroom, take them to the back entrance, and lead them directly into the jury box to prevent them from seeing the shackles. When defense counsel asked the court to verify that the jury would continue to enter and exit through the back door, the judge confirmed: "Correct. Correct.... We will make sure that your clients are all set before we start bringing [the jury] in."[7]

¶ 27 The trial court also addressed Hoang's concern that venire members might be able to hear the rattling of the metal shackles. On the first day of trial, the judge stated that she had never heard the chains, but she nevertheless asked defense counsel to make sure that Hoang was seated when the potential jurors entered, "so all [he has] to do is stand and not walk for this morning."

¶ 28 Consistent with these rulings, after the jury was dismissed on the second day, the judge told the parties that she would

---

6. What was less ambiguous was the trial court's indifference to the due process concern, despite a lack of record evidence that Banegas, who was charged with marijuana distribution, posed a risk of flight or a danger to anyone in the courtroom. *Banegas,* 600 F.3d at 346.

7. Because Hoang did not testify at trial, the court never had to decide whether he would wear shackles when walking to and from the witness stand.

continue to say "all rise" when the jury entered. Hoang objected and asserted that the shackles made noise as he rose. The judge took account of this objection and directed that both the prosecution and defense should stay seated. The next morning, however, the judge changed her ruling after learning from the deputies that Hoang had been shackled all afternoon while rising and sitting. Because the judge had perceived "no indication" that he was in restraints, she told Hoang to continue rising for the court.

¶ 29 The trial continued for nine more days. During this time, the defense made no further objections to the shackles, and the court did not revisit the issue.

¶ 30 The record indicates that the trial court took adequate steps to hide Hoang's leg shackles from the jury. Although we conclude that the court's efforts succeeded in concealing Hoang's restraints at trial, we must add that forcing a defendant to stand trial in leg shackles with no skirting or other visual barrier around his table poses an unnecessary risk to a defendant's presumption of innocence. Other methods of concealment, like draping the prosecution and defense tables or using stun belts or leg braces beneath a defendant's clothing, provide far more effective means of hiding restraints.

¶ 31 Because Hoang asserts that his right to due process was violated by shackling at trial, and the record does not show that his restraints were plainly visible, the burden is on Hoang to demonstrate that one or more jurors observed the shackles. If he can meet this burden, then the burden shifts to the People to prove beyond a reasonable doubt that shackling Hoang at trial did not contribute to the guilty verdict. *Deck*, 544 U.S. at 635, 125 S.Ct. 2007. But if Hoang cannot meet this burden, then *Deck*'s heightened standard is not implicated.

¶ 32 Here, Hoang points to no evidence that any juror actually observed the shackles. Consequently, *Deck*'s constitutional harmless error standard does not apply. Therefore, we affirm the judgment of the court of appeals as to the shackling issue.

## II. Meaningful and Speedy Appeal

¶ 33 We next turn to Hoang's arguments that his rights to a meaningful and a speedy appeal were violated based on deficiencies in the record and delays in the appellate process.

¶ 34 Hoang filed a notice of appeal on July 26, 2006, and an amended notice of appeal on August 23, 2006. He moved for multiple extensions of time to transmit the appellate record because the assigned court reporter repeatedly missed the scheduled deadlines. The record was first filed in the court of appeals two years later, on July 21, 2008, but it was incomplete.

¶ 35 On May 30, 2008, after 626 days of extensions, the court of appeals issued an order informing the parties that it would entertain a motion to remand the case to district court to settle or correct the record. Almost eight months later, on January 15, 2009, Hoang moved to remand. Scheduling delays in the trial court pushed the first remand hearing back to November 13, 2009. A second remand hearing took place on January 15, 2010.

¶ 36 At the second hearing, the trial court recovered previously omitted testimony that still needed to be transcribed; as a result, the trial court reporter filed the supplemental record in the court of appeals on February 23, 2010. Consequently, the briefing on direct appeal did not begin until three years and seven months after Hoang filed the original notice of appeal. Nearly five-and-a-half years passed from the original notice of appeal before the court of appeals issued its decision on February 16, 2012.

¶ 37 First, Hoang claims that deficiencies in the trial transcript prevented him from receiving a meaningful appeal. Second, Hoang contends that the delay in completion of the record deprived him of his due process right to a speedy appeal. We address his contentions in turn.

### A. Standard of Review

¶ 38 Both of these issues raise questions of law that we review de novo. *See People v. Sandoval–Candelaria*, 2014 CO 21, ¶ 11, 321

P.3d 487 (reviewing a speedy sentencing claim de novo).

## B. Meaningful Appeal

¶ 39 In Colorado, the right to appeal a criminal conviction is guaranteed by statute. *See* § 16–12–101, C.R.S. (2013). Although no federal constitutional right to an appeal exists, when a state creates appellate courts as an integral part of the adjudication of guilt or innocence, appellate procedures must comport with the United States Constitution. *Evitts v. Lucey,* 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Due process and equal protection protect a criminal defendant at trial and on direct appeal. Accordingly, an indigent appellant like Hoang is entitled to the production of a record on appeal that includes a complete trial transcript, without which meaningful review is impossible. *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *People v. Rodriguez,* 914 P.2d 230, 300 (Colo.1996). "[T]o obtain relief on a due process claim arising from an incomplete record, a defendant must *always* demonstrate specific prejudice resulting from the state of that record." *Rodriguez,* 914 P.2d at 301 (emphasis in original).

¶ 40 Hoang alleges numerous errors and omissions in the appellate record. These include approximately fifty allegedly unrecorded bench conferences; the omission of some trial testimony from April 17, 2006; the omission of the direct examination of Detective Greaser, a key prosecution witness; and approximately sixty pieces of trial evidence that he claims were excluded from the record. Citing the "lack of reliability of the totality of the transcripts," Hoang asserts that an appellate court cannot make a satisfactory review of his substantive contentions.

¶ 41 We are not persuaded by Hoang's argument that the record is generally unreliable. During the remand hearings, the trial court addressed and remedied every problem that Hoang raised. At the first hearing, the trial court determined that the transcript did not fail to include fifty bench conferences, but rather only two or three. After reconstructing the record for each instance in which the court reporter wrote "unrecorded bench conference," the court clarified that the unrecorded discussions were primarily between co-counsel, between the prosecution and the defense, or between counsel and their clients. The conversations held off the record contained nothing substantive. Furthermore, counsel filed a corrected and amended supplemental record for trial testimony on April 17, 2006, including the direct examination of Detective Greaser, on February 2, 2010. Finally, the district attorney's office located the sixty pieces of evidence in November 2009, and they are part of the record.

¶ 42 Hoang identifies no potential error that may be concealed in an unrecorded bench conference or other omission in the record. He does not contend that the unrecorded conversations addressed his shackling claim, but instead speculates that alleged gaps *"likely* contained essential information that would *potentially* form the basis for the substantive claims on appeal." (Emphasis added.)

¶ 43 Because Hoang makes no showing of specific prejudice, we hold that any alleged deficiencies in the appellate record did not impair his right to a meaningful appeal.

## C. Speedy Appeal

¶ 44 We next turn to Hoang's contention that the delay in completion of the record deprived him of his due process right to a speedy appeal. To assess this claim, we must first ascertain the source of this alleged right and define a structure by which to evaluate it.

¶ 45 This court has not previously addressed whether a criminal defendant has a right to a speedy appeal. The United States Supreme Court has likewise never explicitly acknowledged the existence of this right, but many courts, including our court of appeals, have recognized that inordinate delay in processing appeals can give rise to a cognizable due process claim. *See, e.g., People v. Brewster,* 240 P.3d 291, 297 (Colo.App.2009); *People v. Whittiker,* 181 P.3d 264, 270 (Colo.App. 2006) (surveying cases); *see also United States v. Hawkins,* 78 F.3d 348, 350–51 (8th Cir.1996) (surveying cases).

¶ 46 To date, other jurisdictions have taken one of two basic approaches to speedy appeal claims. Most courts addressing the issue have adopted a modified version of the four-factor speedy trial analysis articulated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)—an "ad hoc" balancing test that weighs the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *See Hawkins*, 78 F.3d at 350–51; *Chatman v. Mancill*, 280 Ga. 253, 626 S.E.2d 102, 107 (2006); *State v. Berryman*, 360 N.C. 209, 624 S.E.2d 350, 360 (2006); *Bhutto v. State*, 114 P.3d 1252, 1267 (Wyo.2005).

¶ 47 Other courts have rejected the *Barker* analysis because it derives from the Sixth Amendment right to a speedy trial, whereas the putative right to a speedy appeal arises from the Fifth Amendment's due process guarantee. *See United States v. Alston*, 412 A.2d 351, 357 (D.C.1980) (Sixth Amendment does not guarantee that "the speedy trial clock continues to run during the pendency" of appeals); *see also State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208, 1225–26 (1983); *Lopez v. State*, 105 Nev. 68, 769 P.2d 1276, 1288–89 (1989). Because the interests protected by the Sixth Amendment do not directly apply when the accused already has been convicted of an offense, these courts instead focus on the due process requirement of fairness. The "one, predominant concern" for these courts is prejudice—that is, whether the defendant is unable to present an adequate appeal or defense if the conviction is reversed and retrial ordered. *Alston*, 412 A.2d at 359; *see also Lopez*, 769 P.2d at 1288–89.

¶ 48 We conclude that the Constitution does not guarantee the right to a "speedy appeal" per se, but rather a due process right to fairness on appeal. Thus, it is the Fifth Amendment's due process clause that protects defendants against appellate delay. Nevertheless, we find the *Barker* speedy trial factors useful in conducting this due process analysis. Apparently the People do as well, having framed the relevant parts of their answer brief around the *Barker* factors. Federal appeals courts routinely use them in evaluating speedy appeals claims,[8] and our court of appeals has relied upon *Barker* in this context as well.[9] Because the *Barker* factors provide a "familiar, thorough and practical means" of assessing both the fairness and prejudice issues implicated by appellate delay, *Chatman*, 626 S.E.2d at 107, we apply that set of factors here, but we adapt the prejudice prong, which was developed in the context of the Sixth Amendment, to take account of the nature of the interests that the right to a speedy appeal protects.

¶ 49 The first *Barker* factor is the length of delay. We accept the People's concession that the length of time at issue here—over three-and-a-half years[10]—is sufficiently lengthy to weigh in Hoang's favor.

¶ 50 The second factor, the reason for the delay, examines whether the government or the criminal defendant is "more to blame" for the delay. *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). *Barker* instructs that "different weights should be assigned to different reasons" for delay. 407 U.S. at 531, 92 S.Ct. 2182. An intentional delay caused by the government weighs strongly against the government. A delay caused by governmental negligence weighs against the govern-

---

8. *See, e.g., United States v. DeLeon*, 444 F.3d 41, 59 (1st Cir.2006); *Hawkins*, 78 F.3d at 350–51; *Harris v. Champion*, 15 F.3d 1538, 1558–59 (10th Cir.1994); *Rheuark v. Shaw*, 628 F.2d 297, 303 (5th Cir.1980).

9. *See Brewster*, 240 P.3d at 297; *People v. McGlotten*, 166 P.3d 182, 185 (Colo.App.2007); *Whittiker*, 181 P.3d at 270.

10. The People assert that eight months of this delay are attributable to Hoang's own failure to move to remand in a timely manner. Even if this is true, several courts have held that a two-year delay on appeal is presumptively unreasonable. *See, e.g., Harris*, 15 F.3d at 1556 (finding a two-year delay between the filing of the notice of appeal and resolution of the direct appeal to be presumptively unreasonable); *McGlotten*, 166 P.3d at 185 (Colo.App.2007) (surveying cases and finding that delays between two and six years have been enough to trigger further inquiry). Regardless of Hoang's eight-month postponement, the court reporter caused approximately three years of delay, and an eight-month period is not sufficiently lengthy to change our analysis.

ment, but not as strongly. Delays caused by court reporters are attributable to the government. *See United States v. Luciano-Mosquera,* 63 F.3d 1142, 1158 (1st Cir.1995); *McGlotten,* 166 P.3d at 186.

¶ 51 Here, the court reporter was responsible for the bulk of the delay. She failed to meet court-mandated deadlines for completing the transcript, and, as a result, her tardiness postponed Hoang's appeal for over three years. This factor therefore favors Hoang as well.

¶ 52 The third factor is the defendant's assertion of his right to an appeal. The People do not contest that Hoang promptly filed his notice of appeal following his trial and raised the issue of appellate delay in his opening brief with the court of appeals. We accept this implicit concession.

¶ 53 The fourth factor under *Barker* is prejudice to the defendant. Only in "the rarest of circumstances" will the right to a speedy disposition be infringed in a post-conviction situation without a demonstration of prejudice. *Perez v. Sullivan,* 793 F.2d 249, 256 (10th Cir.1986). This is because a criminal appellant no longer receives the presumption of innocence after conviction. Because society's interests in punishment and rehabilitation increase, we must evaluate prejudice "in the context of [the defendant's] status as a convicted felon, not as an accused person awaiting trial." *Id.* (applying the *Barker* factors to the right to speedy sentencing).

¶ 54 In *Barker,* the Supreme Court articulated three kinds of prejudice interests in the speedy trial context: (1) preventing oppressive pretrial incarceration; (2) minimizing the defendant's anxiety and concern; and (3) limiting the possibility that the defense will be impaired. 407 U.S. at 532, 92 S.Ct. 2182. The *Barker* Court deemed the third interest the most important because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

¶ 55 Only the third prejudice interest is relevant to our analysis because by resolving a defendant's substantive issues on appeal, the other two interests are necessarily resolved as well. In other words, if an appellate court concludes that a defendant's substantive contentions have merit, the defendant will be entitled to relief because the underlying conviction is invalid—not because the defendant's incarceration was oppressive or caused him undue anxiety. *See, e.g., Whittiker,* 181 P.3d at 271 (concluding that a duly tried and convicted defendant does not suffer "'oppressive' incarceration or 'undue' anxiety" due to appellate delay if he does not prevail on appeal). Viewed from this perspective, it is apparent that prejudice in the speedy appeal context depends entirely upon whether the unwarranted delay impaired the defendant's ability to present his appeal (or, where the defendant prevails on appeal, his ability to defend against the charges upon retrial). *See DeLeon,* 444 F.3d at 57–58 (rejecting criminal appellant's claim of anxiety and oppressive incarceration because the only two cognizable forms of prejudice in the appellate setting are impairment of appeal and impairment of ability to defend case on retrial).

¶ 56 Here, Hoang has not demonstrated that he suffered prejudice from the delay. Rather than offer any proof of particularized prejudice, Hoang argues that this court should not require such a showing. Citing *Doggett,* Hoang would have the government bear the burden of rebutting the "presumption of prejudice" that arises when the delay at issue is uncommonly long.

¶ 57 In *Doggett*—a Sixth Amendment speedy trial case—the Supreme Court held that affirmative proof of particularized prejudice is not essential to every speedy trial claim. 505 U.S. at 655, 112 S.Ct. 2686. The Court recognized that impairment of one's defense is hard to prove due to the deterioration of evidence, and excessive delay presumptively compromises the reliability of a trial. *Id.* Because the prosecution waited eight-and-a-half years between Doggett's indictment and his arrest, during which time Doggett was unaware of the indictment, the delay was so "presumptively prejudicial" that no proof of prejudice was required from the defendant.

¶ 58 *Doggett* is inapposite because the risks posed to a defendant by appellate delay are

significantly different than those posed by trial delay. *See United States v. Mohawk*, 20 F.3d 1480, 1488 (9th Cir.1994) (holding that appellate delay of over ten years did not receive automatic presumption of prejudice). During the time between Doggett's indictment and his arrest, he had no way of preserving evidence or mounting a defense. Indeed, he had no way of knowing that he needed to defend himself at all. Hoang, on the other hand, spent three-and-a-half years waiting for his *appeal*, during which time his counsel worked diligently to preserve trial testimony and other evidence necessary for his substantive contentions. As a result of these efforts, we, like the court of appeals, were able to conduct a thorough review of his substantive claims with full confidence that our ability to evaluate them was not impeded by missing evidence or omissions in the transcripts. And because that thorough review has led us to conclude that Hoang is not entitled to a retrial, he was not prejudiced by the appellate delay. If anything, the lengthy delay likely aided Hoang's appeal rather than prejudicing it.

¶59 We reject Hoang's contention that it is the People's burden to show that he was not prejudiced by the period of appellate delay. Prejudice to the defendant is the touchstone of the speedy appeal due process analysis. Only the defendant can demonstrate how the passage of time has eroded his ability to pursue his appeal (or defend himself upon retrial if he prevails on appeal). Requiring the prosecution to somehow prove that essential defense evidence has not deteriorated is unwarranted and would be almost paradoxical.

¶60 We hold that Hoang was not deprived of his rights to a meaningful and a speedy appeal because he was not prejudiced by deficiencies in the record or by the delay.

### III. Conclusion

¶61 For the reasons stated, we affirm the judgment of the court of appeals.

JUSTICE BOATRIGHT does not participate.