1
 2026 CO 28 In Re The People of the State of Colorado, Plaintiff v. Keevin Bell, II, Defendant No. 25SA254Supreme Court of Colorado, En BancMay 4, 20262
 
          
 Original Proceeding Pursuant to C.A.R. 21 Jefferson County
 District Court Case No. 17CR2407 Honorable Ryan P. Loewer,
 Judge
 
 
          
 Attorneys for Plaintiff: Alexis King, District Attorney,
 First Judicial District Rebecca A. Adams, Senior Appellate
 Deputy District Attorney
 
 
          
 Attorneys for Defendant: Lord Law Firm, LLC, Kathleen A.
 Lord, Diamond Law LLC, Moorea E. Diamond
 
 3
 
          
 Attorneys for Amicus Curiae Colorado District Attorneys'
 Council: John Walsh, District Attorney, Second Judicial
 District Richard F. Lee, Senior Deputy District Attorney,
 Thomas Raynes
 
 
          
 Attorney for Amicus Curiae Office of the Alternate Defense
 Counsel Postconviction Unit: Krista Schelhaas
 
 
          
 JUSTICE HOOD delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE GABRIEL,
 JUSTICE SAMOUR, JUSTICE BERKENKOTTER, and JUSTICE BLANCO
 joined.
 
 
          
 ORDER MADE ABSOLUTE
 
 4
 
           HOOD,
 JUSTICE.
 
 
          ¶1
 In this original proceeding, defendant Keevin Bell, II, asks
 us to clarify whether a postconviction court has the
 authority to order duplicate discovery. Bell's
 postconviction counsel — a different attorney than
 Bell's trial and appellate counsel — sought from
 the prosecution a copy of reams of missing pretrial discovery
 in Bell's case. The prosecution directed Bell's
 postconviction counsel to request it under the Colorado
 Criminal Justice Records Act ("CCJRA"),
 §§ 24-72-301 to -309, C.R.S. (2025). Instead,
 postconviction counsel moved the district court for an order
 compelling disclosure, which the court denied based on its
 belief that it lacked the authority to do otherwise.
 
 
          ¶2
 We conclude that if an indigent defendant has shown that he
 may be entitled to postconviction relief based on specific
 facts likely mentioned in pretrial discovery, which is
 unavailable to postconviction counsel, and which would help
 the defendant substantiate his allegations, the
 postconviction court should order the prosecution to provide
 a free copy of the requested duplicate discovery to the
 defendant.
 
 
          I.
 Facts and Procedural History
 
 
          ¶3
 A jury convicted Bell of first degree murder, among other
 offenses, and the court sentenced him to life in prison
 without the possibility of parole. Bell
 
 5
 
 appealed, and a division of the court of appeals affirmed his
 convictions and sentence. People v. Bell, No.
 19CA767, ¶ 1 (June 2, 2022).
 
 
          ¶4
 About two years later, Bell moved, pro se, for postconviction
 relief under Crim. P. 35(c) and requested the appointment of
 counsel. The district court appointed the Public
 Defender's Office, but due to a conflict of interest,
 alternate defense counsel ("ADC") entered an
 appearance instead.
 
 
          ¶5
 ADC sought a copy of the discovery from Bell's trial
 counsel but ultimately received only about half of it. (ADC
 estimates she is missing about thirty-three out of sixty-six
 discovery packets. "Discovery" in this context
 encompasses, for example, a broad range of police reports,
 witness statements, photos, and forensic test results.
 See, e.g., Crim. P. 16(I)(a)(1). It is the basic
 fund of information on which charges are based and strategic
 decisions are made.) ADC requested a copy of the missing
 packets from the prosecution and was told she needed to
 submit a request through the CCJRA and pay the associated
 costs and fees.
 
 
          ¶6
 ADC then moved the court to compel the prosecution to
 disclose the requested materials. The court denied the
 motion. Relying on our holdings in People v.
 Silva-Jaquez, 2025 CO 11, 564 P.3d 650, and People
 v. Owens, 2014 CO 58M, 330 P.3d 1027, the district court
 concluded:
 
 
 It is only death penalty proceedings, in which defense seeks
 disclosure from the prosecution, that implicate the due
 process clause and permit a court to rely on this
 constitutional provision to compel discovery of
 constitutionally material information favorable to
 
 6
 
 defendant. Absent some rule, statute, or constitutional
 provision, a court does not have "inherent
 authority" to order discovery in postconviction
 proceedings.
 
 
 (Citation omitted.) The court then concluded that
 Silva-Jaquez "leaves no room . . . to be able
 to find that [Bell] . . . has a constitutional right to
 postconviction discovery."
 
 
          ¶7
 Bell petitioned this court for an order to show cause under
 C.A.R. 21, which we granted.[1]
 
 
          II.
 Analysis
 
 
          ¶8
 We begin by explaining our jurisdiction to hear this case and
 the applicable standard of review. We then discuss the
 statutes and rules that govern pretrial discovery and
 postconviction review in Colorado, and we consider whether
 those sources or any constitutional rights give defendants a
 right to duplicate discovery
 
 7
 
 in postconviction proceedings. Finally, we consider and
 reject the prosecution's argument that postconviction
 counsel must resort to the CCJRA to obtain a copy of pretrial
 discovery.
 
 
          A.
 Original Jurisdiction
 
 
          ¶9
 Relief under C.A.R. 21 "is extraordinary in nature and
 is a matter wholly within" our discretion. C.A.R.
 21(a)(2). "Such relief will be granted only when no
 other adequate remedy is available," id., and,
 for example, when the "'petition raises "issues
 of significant public importance that we have not yet
 considered,"'" Silva-Jaquez, ¶
 11, 564 P.3d at 653 (quoting People v. Kilgore, 2020
 CO 6, ¶ 8, 455 P.3d 746, 748).
 
 
          ¶10
 We choose to exercise our discretion here because the issue
 presents a matter of statewide concern: Procedures and
 standards for postconviction discovery vary dramatically from
 one judicial district to the next. See id. at ¶
 16, 564 P.3d at 653. By weighing in here, we advance the
 public's interest in the uniform administration of
 justice. See id. at ¶ 44, 564 P.3d at 657.
 
 
          B.
 Standard of Review
 
 
          ¶11
 Although we generally review a district court's criminal
 discovery orders for an abuse of discretion, id. at
 ¶ 18, 564 P.3d at 654, the questions presented here
 require us to consider whether a postconviction court has the
 authority to order
 
 8
 
 the prosecution to provide the defense with a copy of
 pretrial discovery, which is a question of law. Therefore,
 our review is de novo. Id.
 
 
          C.
 Postconviction Discovery
 
 
          ¶12
 There is no explicit constitutional right to discovery in
 criminal cases or to postconviction review; any such rights
 have been created by rule and statute. People v.
 Castorena, 2026 CO 2, ¶ 14, 582 P.3d 459, 464;
 see also People v. Wiedemer, 852 P.2d 424, 438
 (Colo. 1993). And because "courts have 'no
 freestanding authority to grant criminal discovery beyond
 what is authorized by the Constitution, the rules, or by
 statute,'" Castorena, ¶ 14, 582 P.3d
 at 464 (quoting Silva-Jaquez, ¶ 19, 564 P.3d at
 654), we consider each source of law to determine whether a
 court's authority to order discovery extends to
 postconviction proceedings.
 
 
          1.
 Statutes and Rules
 
 
          ¶13
 Crim. P. 16 is the primary source of a Colorado trial
 court's authority to order discovery in criminal cases.
 However, it expressly applies only before trial and therefore
 doesn't apply to postconviction proceedings. Crim. P. 16
 (governing "Discovery and Procedure Before Trial");
 see, e.g., Silva-Jaquez, ¶ 23, 564
 P.3d at 654.
 
 
          ¶14
 Postconviction proceedings are generally governed by Crim. P.
 35 and section 18-1-410, C.R.S. (2025). But neither the
 statute nor the rule provides for
 
 9
 
 discovery in postconviction proceedings. See
 Silva-Jaquez, ¶ 24, 564 P.3d at 655. We've
 previously determined that "[s]uch silence creates a
 limitation, not an opportunity." Id. at ¶
 26, 564 P.3d at 655; see also People v. Thompson,
 2020 COA 117, ¶ 32, 485 P.3d 566, 572 ("Had the
 supreme court intended to allow . . . discovery in connection
 with a Crim. P. 35(c) motion, it easily could have said so.
 It did not.").
 
 
          ¶15
 Despite the general absence of a right to discovery in
 postconviction proceedings, there are a few exceptions.
 
 
          ¶16
 First, defendants convicted of felony offenses have a narrow
 statutory right to postconviction discovery related to DNA
 evidence. These defendants may apply "for DNA testing
 concerning the[ir] conviction and sentence." §
 18-1-412(1), C.R.S. (2025); see also §
 18-1-411(3.3), C.R.S. (2025).
 
 
          ¶17
 Second, we've recognized a defendant's right to
 postconviction discovery in death penalty cases. See
 Owens, ¶¶ 1-2, 330 P.3d at 1028-29. But that
 right is expressly provided for in the rules and statutes
 governing the unitary review process, a process that applies
 exclusively to death penalty cases. Id. at ¶
 14, 330 P.3d at 1031; Crim. P. 32.2; §§ 16-12-201
 to -210, C.R.S. (2025). Therefore, this
 
 10
 
 limited right to postconviction discovery doesn't extend
 to non-death penalty cases.[2] See Silva-Jaquez,
 ¶¶ 36-38, 564 P.3d at 656.
 
 
          ¶18
 Beyond these express provisions, there is no statute or rule
 authorizing a court to order postconviction discovery.
 See id. at ¶¶ 20, 26, 564 P.3d at 654-55.
 And although "trial courts possess 'the inherent
 authority to manage their dockets through scheduling
 orders' addressing the endorsement of witnesses and other
 timely disclosures," id. at ¶ 7, 564 P.3d
 at 652 (quoting Owens, ¶ 16, 330 P.3d at 1032),
 courts may not rely on this "inherent authority to order
 discovery in a postconviction proceeding," id.
 at ¶ 3, 564 P.3d at 652.
 
 
          ¶19
 But that is not the end of the inquiry. We've observed
 that there may be circumstances when "a
 defendant's constitutional rights . . . require
 the prosecution to disclose certain information in a
 postconviction proceeding," and so a court may order
 discovery to protect those rights. Id. at ¶ 20,
 564 P.3d at 654. Ultimately, the judiciary has a duty
 "to uphold the constitution in all judicial
 proceedings." People v. Germany, 674 P.2d 345,
 350 (Colo. 1983). We therefore turn our attention to whether
 any of Bell's constitutional rights are implicated here.
 
 11
 
          2.
 Constitutional Rights
 
 
          ¶20
 When a state creates a right by statute or rule, the
 accompanying procedures must comport with a defendant's
 constitutional rights, including the right to due process.
 Evitts v. Lucey, 469 U.S. 387, 401 (1985); Hoang
 v. People, 2014 CO 27, ¶ 39, 323 P.3d 780, 788;
 see also Dist. Att'y's Off. v. Osborne, 557
 U.S. 52, 68 (2009) (A "state-created right can, in some
 circumstances, beget yet other rights to procedures essential
 to the realization of the parent right." (quoting
 Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 463
 (1981))).
 
 
          a.
 Effective Assistance of Counsel
 
 
          ¶21
 In Colorado, there is no constitutional right to
 postconviction counsel, but Crim. P. 35(c)(3)(IV) and (V)
 authorize a postconviction court to appoint counsel if the
 court concludes that the defendant's postconviction
 motion has arguable merit. See Townsell v. People,
 2026 CO 11M, ¶ 24, 585 P.3d 838, 843.
 
 
          ¶22
 If appointed, postconviction counsel is constitutionally
 obligated to provide effective assistance. See U.S.
 Const. amend. VI; Colo. Const. art. II, § 16; People
 v. Breaman, 939 P.2d 1348, 1351-52 (Colo. 1997). Just
 like trial and appellate counsel, postconviction counsel must
 provide assistance that is at least "minimally
 effective" and "'of sufficient quality to
 ensure that the process itself is fundamentally
 fair.'" Silva v. People, 156 P.3d 1164,
 1169 (Colo. 2007) (quoting People v. Valdez, 789
 P.2d 406, 410 (Colo. 1990)); see also Strickland v.
 Washington,
 
 12
 
 466 U.S. 668, 687 (1984) (providing the two-prong test a
 defendant must meet to establish that counsel was
 ineffective); § 21-1-104, C.R.S. (2025) (explaining the
 duties of a public defender in representing indigent
 clients). Whether counsel provided effective assistance is
 measured by a standard of objective reasonableness.
 Ardolino v. People, 69 P.3d 73, 76 (Colo. 2003).
 
 
          ¶23
 Under Crim. P. 35(c)(3)(V), if the court appoints
 postconviction counsel, counsel must then respond to that
 order by indicating whether they will enter an appearance on
 behalf of the defendant or whether they have any conflicts,
 requesting any additional time needed to investigate, and
 adding any claims that they determine have arguable merit.
 See § 21-2-104, C.R.S. (2025);
 Townsell, ¶ 24, 585 P.3d at 843. To satisfy
 these requirements in a constitutionally compliant manner,
 postconviction counsel may need to review all the pretrial
 discovery. See Ardolino, 69 P.3d at 77; see
 also Crim. P. 35(c)(3). Depending on the nature of the
 defendant's allegations, it could be objectively
 unreasonable not to. See Fisher v. Gibson, 282 F.3d
 1283, 1296 (10th Cir. 2002); Ardolino, 69 P.3d at
 76.
 
 
          ¶24
 Thus, under some circumstances, the intersection of the
 limited state-created right to postconviction counsel and a
 defendant's constitutional right to such counsel's
 effective assistance may authorize a court to order the
 prosecution to copy and disclose pretrial discovery to the
 defendant even in postconviction proceedings. To hold
 otherwise —that is, to flatly prohibit such orders
 —would
 
 13
 
 elevate administrative ease for district attorneys over the
 effectiveness of postconviction counsel in fulfilling their
 assigned role in a system that our state government created.
 
 
          b.
 Due Process
 
 
          ¶25
 Due process also looms large here. The Due Process Clause of
 the United States Constitution "imposes procedural
 limitations on a State's power to take away protected
 entitlements," Osborne, 557 U.S. at 67, but it
 doesn't dictate what form those procedures must take,
 id. at 69; accord Pennsylvania v. Finley,
 481 U.S. 551, 559 (1987). See U.S. Const. amend.
 XIV; see also Colo. Const. art. II, § 25. And
 in the postconviction context, due process simply ensures
 that the procedures governing a state-created right don't
 "'offend[] some principle of justice so rooted in
 the traditions and conscience of our people as to be ranked
 as fundamental,' or 'transgress[] any recognized
 principle of fundamental fairness in operation.'"
 Osborne, 557 U.S. at 69 (quoting Medina v.
 California, 505 U.S. 437, 446, 448 (1992)).
 
 
          ¶26
 One of these fundamental principles is that all defendants
 are entitled to the same system of justice regardless of
 wealth. See Griffin v. Illinois, 351 U.S. 12, 18-19
 (1956); Jurgevich v. Dist. Ct., 907 P.2d 565, 567
 (Colo. 1995). Accordingly, when the state creates a right,
 "[t]he State cannot adopt procedures which leave . . .
 indigent defendants merely a 'meaningless ritual'
 while others in better economic circumstances have a
 'meaningful appeal.'" Ross v. Moffitt,
 417 U.S. 600, 612 (1974)
 
 14
 
 (quoting Douglas v. California, 372 U.S. 353, 358
 (1963)); see also Smith v. Bennett, 365 U.S. 708,
 713 (1961) (" When an equivalent right is
 granted by a State, financial hurdles must not be permitted
 to condition its exercise."); People v. Nord,
 790 P.2d 311, 315 (Colo. 1990) ("The Due Process and
 Equal Protection Clauses of the Fourteenth Amendment are
 implicated when a state creates 'differences in access to
 the instruments needed to vindicate legal rights' on the
 basis of the 'financial condition [sic] of the
 defendant.'" (quoting Roberts v. LaVallee,
 389 U.S. 40, 42 (1967) (per curiam))).
 
 
          ¶27
 As discussed, Colorado has created a right to postconviction
 review in certain circumstances. And a defendant is entitled
 to a meaningful opportunity to challenge the effective
 assistance of trial and appellate counsel. See
 Wiedemer, 852 P.2d at 441 (noting "the overriding
 concern enunciated in Germany that a defendant have
 the meaningful opportunity required by due process to
 challenge his conviction"); Dooly v. People,
 2013 CO 34, ¶ 6, 302 P.3d 259, 262 ("[A] criminal
 defendant ha[s] an absolute right to challenge the
 effectiveness of his trial counsel by postconviction review .
 . . ."). So, Griffin's holding that access
 to justice not be determined by one's financial situation
 applies to postconviction proceedings. See Smith,
 365 U.S. at 713-14 (applying Griffin to state habeas
 filing fees). Relatedly, we discourage defendants from
 raising ineffective-assistance-of-counsel claims on direct
 appeal, preferring that such allegations be made in
 postconviction
 
 15
 
 proceedings with a fully developed factual record. See
 Ardolino, 69 P.3d at 77; People v. Thomas, 867
 P.2d 880, 886 (Colo. 1994). Postconviction proceedings are
 often a defendant's best —and sometimes only
 — opportunity for meaningful review of any
 ineffective-assistance-of-counsel claims. See
 Ardolino, 69 P.3d at 77.
 
 
          ¶28
 But this doesn't mean postconviction defendants are
 entitled to the full panoply of rights they had at trial.
 See Jurgevich, 907 P.2d at 567. Due process
 doesn't require "absolute equality or precisely
 equal advantages" in all contexts. United States v.
 MacCollom, 426 U.S. 317, 324 (1976) (quoting San
 Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 24
 (1973)). It requires only that indigent defendants have
 "an adequate opportunity to present their claims
 fairly." Ross, 417 U.S. at 612.
 
 
          ¶29
 And although a postconviction court may deny a
 defendant's motion without appointing counsel and without
 a hearing if it concludes "the motion, files, and record
 in the case clearly establish that the allegations presented
 in the defendant's motion are without merit and do not
 warrant postconviction relief," Ardolino, 69
 P.3d at 77, if the court concludes the motion has arguable
 merit and appoints counsel, the court must ensure that the
 defendant's constitutional rights are protected, cf.
 Hoang, ¶ 39, 323 P.3d at 788 (holding, in relevant
 part, that "[a]lthough no federal constitutional right
 to an appeal exists, when a state creates
 
 16
 
 appellate courts as an integral part of the adjudication of
 guilt or innocence, appellate procedures must comport with
 the United States Constitution").
 
 
          ¶30
 Accordingly, the state doesn't violate a defendant's
 right to due process by requiring an indigent defendant to do
 more than simply assert the fact of indigency and a desire to
 look for errors. See Jurgevich, 907 P.2d at 567
 ("A defendant does not have a constitutional right to a
 free transcript to search for errors to raise in a collateral
 attack."); Carr v. Dist. Ct., 402 P.2d 182, 183
 (Colo. 1965). Nor is an indigent defendant entitled to
 discovery based on bare assertions of error. Cf.
 Jurgevich, 907 P.2d at 568 ("Merely because a
 transcript might be of benefit to a defendant does not mean
 that he is constitutionally entitled to one.");
 MacCollom, 426 U.S. at 327. Although a defendant
 with the financial means to pay for copies is free to spend
 his money to pursue frivolous claims, the state isn't
 obligated to subsidize that pursuit. See Jurgevich,
 907 P.2d at 567; see also Ross, 417 U.S. at 616
 ("The duty of the State under our cases is not to
 duplicate the legal arsenal that may be privately retained by
 a criminal defendant in a continuing effort to reverse his
 conviction, but only to assure the indigent defendant an
 adequate opportunity to present his claims fairly
 ....").
 
 
          ¶31
 Rather, an indigent defendant must show that "he may be
 entitled to relief under Crim. P. 35(c) . . . and that the
 record might contain specific facts that would substantiate
 alleged errors." Jurgevich, 907 P.2d at 567
 (citation omitted); see also
 
 17
 
 MacCollom, 426 U.S. at 326. This requires a
 defendant to assert specific errors, along with specific
 facts. See Snavely v. Shannon, 511 P.2d 905, 907
 (Colo. 1973); Carr, 402 P.2d at 183; see also
 Ruark v. Gunter, 958 F.2d 318, 319 (10th Cir. 1992).
 
 
          ¶32
 We therefore conclude that, if an indigent defendant meets
 these requirements, a postconviction court should order the
 prosecution to disclose Crim. P. 16 discovery materials to
 protect the defendant's due process rights.
 
 
          3.
 Application
 
 
          ¶33
 Here, Bell asserted seven claims of ineffective assistance of
 trial counsel, including, among others, that trial counsel
 was ineffective for failing to investigate Bell's
 assertion of voluntary intoxication and also for failing to
 assert the defense that, because of that intoxication, Bell
 lacked the specific intent necessary to commit first degree
 murder. See Ardolino, 69 P.3d at 76
 ("[Strategic choices made after less than complete
 investigation are reasonable precisely to the extent that
 reasonable professional judgments support the limitations on
 investigation."). Bell also asserted that trial counsel
 was ineffective for failing to investigate evidence from the
 crime scene, which showed signs of tampering based on the
 unusual placement of the shell casing on the victim's
 body. See Fisher, 282 F.3d at 1296 (concluding that
 "[a] decision not to investigate cannot be deemed
 reasonable if it is uninformed"). Bell believes that
 such investigation might have produced evidence to
 corroborate his version of events and thus his defense.
 Additionally,
 
 18
 
 Bell alleged that trial counsel failed to tell him that the
 prosecution had offered a plea deal even though Bell had told
 counsel he was interested in accepting a plea in lieu of
 going to trial. See Lafler v. Cooper, 566 U.S. 156,
 168 (2012). These assertions contain specific allegations of
 ineffectiveness and specific facts that might be supported by
 the requested discovery.
 
 
          ¶34
 Moreover, before asking the court to order the disclosure,
 postconviction counsel made a good-faith effort to obtain a
 complete copy of discovery from Bell's trial attorneys,
 who claimed to possess only about half of the discovery.
 Bell's postconviction counsel then requested the missing
 packets from the prosecution. The prosecution has never
 argued they can't provide the packets because they
 don't have them.
 
 
          ¶35
 Under these circumstances, we conclude that the
 postconviction court has the authority to order discovery and
 that it erred by concluding otherwise. See Osborne,
 557 U.S. at 69; cf. Jurgevich, 907 P.2d at 567-68
 (concluding the defendant wasn't entitled to a free
 transcript because he had failed to allege specific facts
 that would entitle him to postconviction relief and instead
 sought the transcript merely to discover potential errors).
 
 
          D.
 The CCJRA
 
 
          ¶36
 The prosecution argues that, to obtain a copy of pretrial
 discovery, postconviction counsel should submit a CCJRA
 request and pay the requisite fees
 
 19
 
 rather than seeking a court order to compel disclosure. By
 following this procedure, they argue, the district
 attorney's office will be compensated for the cost of
 finding and copying those materials.
 
 
          ¶37
 The CCJRA provides for public inspection of criminal justice
 agency records. Under the statute, with some exceptions not
 applicable here,
 
 
 all criminal justice records, at the discretion of the
 official custodian, may be open for inspection by any person
 at reasonable times, . . . and the official custodian of any
 such records may make such rules and regulations with
 reference to the inspection of such records as are reasonably
 necessary for the protection of such records and the
 prevention of unnecessary interference with the regular
 discharge of the duties of the custodian or his office.
 
 
 § 24-72-304(1), C.R.S. (2025). "Criminal justice
 agencies may assess reasonable fees . . . for the search,
 retrieval, and redaction of criminal justice records
 requested," § 24-72-306(1), C.R.S. (2025), except
 that any fee provisions "shall not apply to discovery
 materials that a criminal justice agency is required to
 provide in a criminal case pursuant to [Crim. P. 16],"
 § 24-72-306(3).
 
 
          ¶38
 A copy of pretrial discovery obtained pursuant to a CCJRA
 request, however, will not always satisfy postconviction
 counsel's duty to provide effective assistance because
 the CCJRA's plain language grants the custodian of the
 records requested discretion to disclose all, some, or none
 of those records, and any records disclosed are subject to
 redaction. § 24-72-304(1), (4), (4.5); § 24-72-305,
 C.R.S. (2025); see also Harris v. Denver Post Corp.,
 123 P.3d 1166, 1174 (Colo. 2005)
 
 20
 
 (explaining the scope of limitations on a custodian's
 discretion). Thus, despite the CCJRA's general preference
 for disclosure, see Freedom Colo. Info., Inc. v. El Paso
 Cnty. Sheriff's Dep't, 196 P.3d 892, 899 (Colo.
 2008), postconviction counsel would have no guarantee that a
 full, unredacted copy of pretrial discovery would be provided
 pursuant to a CCJRA request. And although the prosecution
 stated in their response brief that they don't redact
 records requested under the CCJRA by postconviction counsel,
 they represent but one judicial district in the state. Other
 districts are free to create different policies.
 
 
          ¶39
 Accordingly, we conclude that postconviction counsel need not
 resort to the CCJRA to obtain a copy of constitutionally
 essential pretrial discovery.
 
 
          III.
 Conclusion
 
 
          ¶40
 Therefore, we make the order to show cause absolute, reverse
 the district court's denial of Bell's motion to
 compel disclosure, and remand the case to the district court
 for further proceedings consistent with this opinion. The
 district court should evaluate whether Bell has alleged
 specific errors and specific facts in the requested discovery
 that would substantiate those errors. If the court finds that
 he has, then it should order the prosecution to disclose the
 discovery.
 
 
 ---------
 
 
 Notes:
 
 
 [1] The issues presented by the petitioner
 in this original proceeding are as follows:
 
 
 1. Does a postconviction court have authority to order
 the prosecution to provide the defense with a copy of Trial
 Discovery (i.e., a duplicate of the same Rule 16 discovery
 previously disclosed to trial counsel) when this information
 is necessary to safeguard the defendant's constitutional
 rights to due process of law and effective assistance of
 counsel?
 
 
 2. Does People v. Silva-Jaquez, 2025 CO 11,
 [564 P.3d 650,] lend any support to the Postconviction
 Court's broad pronouncement that, outside of a death
 penalty proceeding, a district court has no constitutional
 authority to order the prosecution to produce postconviction
 discovery?
 
 
 [2] Colorado abolished the death penalty
 in 2020 for offenses committed on or after July 1, 2020. Ch.
 61, secs. 1, 10, §§ 16-11-901,
 18-1.3-401(1)(a)(V.5)(A), 2020 Colo. Sess. Laws 204, 204,
 209-10.
 
 
 ---------