COLORADO COURT OF APPEALS                                    **2016COA175**

---

Court of Appeals No. 14CA0710
City and County of Denver District Court No. 87CR1542
Honorable Elizabeth A. Starrs, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

William Daniel Hardin,

Defendant-Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE FOX
Bernard and Richman, JJ., concur

Announced December 1, 2016

---

Cynthia H. Coffman, Attorney General, Elizabeth Rohrbough, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robin M. Lerg, Alternate Defense Counsel, Montrose, Colorado, for Defendant-
Appellant

¶ 1     Defendant, William Daniel Hardin, appeals the postconviction court's long-awaited order denying his Crim. P. 35(c) motion for postconviction relief.[1]  We affirm.

## I.     Background

¶ 2     Hardin was accused of robbing three men, Isaac Fisher, Victor Irving, and Lloyd Rhodes, and of killing two of the men, Fisher and Irving.  The prosecution charged Hardin with one count of aggravated robbery for the robbery of all three men and with two counts each of felony murder and murder after deliberation with respect to the killings of Fisher and Irving.  When Hardin's 1988 trial concluded, the jury found him guilty by separate verdict forms of two counts of aggravated robbery regarding Irving and Rhodes and two counts each of felony murder and murder after deliberation with respect to Fisher and Irving.  The jury acquitted Hardin of the aggravated robbery count with respect to Fisher.

¶ 3     The trial court entered a judgment of conviction and sentenced Hardin to consecutive terms of imprisonment of sixteen years for each aggravated robbery conviction and life for each felony murder

---

[1] The third and final district court judge to preside over this case finally took action after years of inaction by the judge's two predecessors.

1

conviction. It did not sentence Hardin on the murder after deliberation convictions.[2]

¶ 4     Several months after the trial, Hardin filed a notice of appeal regarding the judgment of conviction. Soon after, he requested and was granted a limited remand to pursue an ineffective assistance claim, pursuant to Crim. P. 35(c), concerning his trial counsel. To avoid a conflict of interest, the public defender's office was allowed to withdraw from the postconviction proceedings and the appeal. In granting the remand in 1991, a division of this court ordered that the postconviction proceedings "be done with all due speed."

¶ 5     Over the next six years, the postconviction court appointed a succession of private attorneys to represent Hardin; they all withdrew before resolution of the proceedings. The postconviction court repeatedly set the matter, only to later vacate the settings. Hardin repeatedly expressed frustration with his legal

---

[2] The trial court's minute orders and mittimus seemingly conflict with each other as to whether the aggravated robbery and felony murder convictions regarding Irving merged, and whether Hardin was sentenced to life imprisonment on each count of felony murder and murder after deliberation, or just the felony murder convictions. Two divisions of this court, and the postconviction court, later interpreted Hardin's sentences as explained here.

2

representation and with his appointed attorneys' lack of action in the postconviction court and in this court.

¶ 6    A division of this court eventually vacated the limited remand and decided Hardin's direct appeal in 1997, about ten years after Hardin committed the underlying crimes. *See People v. Hardin*, (Colo. App. No. 88CA1898, Dec. 18, 1997) (not published pursuant to C.A.R. 35(f)) (*Hardin I*). That division affirmed Hardin's convictions, but it remanded with instructions for the trial court to vacate the felony murder conviction concerning Irving's death, enter a judgment of conviction for the count of murder after deliberation concerning Irving's death, and resentence Hardin accordingly.[3] *Id.* That division also concluded that Hardin's ineffective assistance of counsel claims should be considered in a postconviction proceeding. *Id.*

¶ 7    Hardin later filed a pro se Crim. P. 35(c) motion raising numerous claims, including ineffective assistance of counsel. The postconviction court denied the motion in 1999 without holding a hearing, appointing counsel, or resentencing Hardin in accordance

---

[3] The resulting sentence for this conviction, finally imposed in 2014, was life imprisonment.

with the remand instructions. Hardin appealed the 1999 order denying his postconviction motion. In December 2000, a division of this court reversed the order and remanded with instructions to hold further proceedings on Hardin's postconviction claims and to comply with the 1997 remand instructions regarding resentencing. *See People v. Hardin*, (Colo. App. No. 99CA2405, Dec. 21, 2000) (not published pursuant to C.A.R. 35(f)).

¶ 8 After the remand, the postconviction court appointed another attorney to represent Hardin in April 2001. Over the next four years, and after the postconviction court allowed several extensions of time to supplement Hardin's pro se Crim. P. 35(c) motion, Hardin's appointed counsel failed to file any supplement. Meanwhile, Hardin made numerous pro se filings expressing his frustration with his attorney's inaction and his desire to obtain adequate counsel. In response to the inactivity in these proceedings, the postconviction court appointed Hardin's current attorney in February 2005.

¶ 9 Almost eight years later, in December 2012 — about twenty-four years after trial and about twelve years after Hardin filed his original Crim. P. 35(c) motion — the third and final trial judge to

preside over this case since the 2000 remand issued an order mandating that Hardin's postconviction proceedings "get moving."[4] Thereafter, Hardin's attorney filed two supplemental briefs in support of his motion for postconviction relief. The postconviction court held an evidentiary hearing over three days on the matter. After the hearing, the postconviction court denied Hardin's motion. In denying the motion, the postconviction court stated that the twelve-year delay in the postconviction proceedings "did not amount to a remedial due process violation . . . and, perhaps most importantly, did not legally prejudice [Hardin]."

¶ 10    Hardin now appeals.

## II.    Due Process

¶ 11    Hardin argues that the postconviction court erred in concluding that the proper remedy for the twelve-year delay in resolving his postconviction claims, which violated his right to due

---

[4] The judge, noting the "excruciating and often inexplicable delays" in this case, stated that "nothing substantively has been done" in this case since the December 2000 remand; "no hearing has ever been held" on Hardin's Crim. P. 35(c) motion; appointed counsel had failed to supplement the motion during her nearly seven-year tenure as Hardin's attorney; and Hardin's series of attorneys had filed "endless motions for extensions of time," several of which had yet to be ruled upon.

process, was to finally address his Crim. P. 35(c) motion, rather than grant him a new trial. In support of this position, Hardin asserts that the delay impaired his ability to present his claims for postconviction relief, as shown by the witnesses' faded memories and the unavailability of certain records. Hardin further argues that we should analyze his due process claim concerning the twelve-year delay in his postconviction proceedings in the same manner as appellate delays — that is, under the Colorado Supreme Court's iteration of the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). *See Hoang v. People*, 2014 CO 27, ¶¶ 48-54. We conclude that the postconviction court properly declined to grant Hardin a new trial on this issue, but we respectfully disagree with the postconviction court's legal analysis.

A. Preservation, Standard of Review, and Applicable Law

¶ 12    The parties agree that this issue has been properly preserved.

¶ 13    This issue presents a mixed question of fact and law. *See People v. Glaser*, 250 P.3d 632, 636 (Colo. App. 2010). We defer to a postconviction court's findings of fact if they are supported by evidence in the record, and we review its conclusions of law de novo. *See Dunlap v. People*, 173 P.3d 1054, 1063 (Colo. 2007).

6

¶ 14    As a matter of first impression, we determine that due process claims arising from delays in resolving motions for postconviction relief should be analyzed under the balancing test set forth in *Barker,* 407 U.S. at 530.  Although this test was originally applied to issues concerning a defendant's Sixth Amendment right to a speedy trial, courts have employed it in the context of due process claims arising from delays in various legal proceedings.  *See, e.g., People v. Smith,* 183 P.3d 726, 730 (Colo. App. 2008) (delay regarding a probation revocation hearing); *People v. Rios,* 43 P.3d 726, 732 (Colo. App. 2001) (delay in appellate proceedings); *Commonwealth v. Burkett,* 5 A.3d 1260, 1276 (Pa. Super. Ct. 2010) (delay in resolving a motion for postconviction relief).  We see no reasoned basis why the Barker factors should not inform our analysis in the context of postconviction proceedings.

¶ 15    Under this test, a court should consider the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right; and (4) whether the defendant suffered prejudice as a result of the delay.  *Rios,* 43 P.3d at 732; *accord Barker,* 407 U.S. at 530.  The length of the delay must be at least presumptively prejudicial to the defendant before

7

further inquiry into the other factors is warranted. *See Barker*, 407 U.S. at 530. No single factor is determinative. *Id.* at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

### B. Analysis

¶ 16 Employing the *Barker* balancing test here, we defer to the postconviction court's factual findings and agree that the delay did not violate Hardin's right to due process in a manner entitling him to a new trial. *See Makeen v. Hailey*, 2015 COA 181, ¶ 21 ("[W]e can affirm on any grounds supported by the record.").

### 1. Length of the Delay

¶ 17 Under these circumstances, we are satisfied that the twelve-year delay was presumptively prejudicial and warrants further inquiry into the other *Barker* factors. *See Moody v. Corsentino*, 843 P.2d 1355, 1364 (Colo. 1993) (finding an eight-year delay sufficient to proceed to examining the other *Barker* factors); *see also Smith*, 183 P.3d at 730 (finding a six-year delay sufficient).

### 2. Reason for the Delay

¶ 18 The second factor "examines whether the government or the criminal defendant is 'more to blame' for the delay." *Hoang*, ¶ 50

(citation omitted). The postconviction court found that the "negligence" of counsel and of the postconviction court were to blame for the twelve-year delay. While any negligence of the postconviction court and the prosecution's counsel is likely attributable to the government, *see id.* (attributing delays caused by court reporters to the government), any negligence of Hardin's counsel is, unfortunately, attributable to him, even though his attorneys were appointed by the court.[5] *See Vermont v. Brillon,* 556 U.S. 81, 91 (2009) ("[D]elay caused by the defendant's counsel is also charged against the defendant . . . whether counsel is privately retained or publicly assigned . . . ."); *Glaser,* 250 P.3d at 635. Consequently, we conclude that this factor weighs in favor of neither Hardin nor the government, as both inexcusably contributed to the delay. *See Barker,* 407 U.S. at 531 (noting that delays caused by negligence do not weigh as strongly against the government as those caused intentionally).

---

[5] Any issues Hardin may have with the assistance of his appointed counsel are not currently before us; they would be part of a separate proceeding.

### 3. Assertion of Right

¶ 19　On the third factor, the record evidences Hardin's numerous letters and pro se motions expressing his desire to have his claims for postconviction relief decided and his frustration with the inaction of the court and of his attorneys. Thus, this factor weighs in Hardin's favor. *See Smith*, 183 P.3d at 730.

### 4. Prejudice

¶ 20　Regarding the final factor, we examine whether Hardin suffered prejudice as a result of the delay, particularly whether the delay impaired Hardin's ability to prepare his case for postconviction relief. *See Barker*, 407 U.S. at 532.

¶ 21　The record supports the postconviction court's findings regarding the evidence, in the form of tangible records and witnesses, available to Hardin at the time of the evidentiary hearing. The postconviction court found that only a "small part" of the record was unavailable as a result of the delay, and it found the witness testimony available to Hardin was sufficient for him to "fully and completely" present his claims. Importantly, the court reasoned that if anyone was prejudiced by Hardin's trial attorney's "often dim memory" and the unavailability of certain evidence, it

was the prosecution. Hardin testified at the hearing and often contradicted trial counsel's testimony.

¶ 22 While the record shows that the witnesses' memories had dimmed to some degree by the time the evidentiary hearing was held, it also shows that the witnesses were able to recall key details, such as trial counsel's strategic reason for declining to object to the duplicity or trifurcation[6] of the aggravated robbery charge. On this record, we cannot say that Hardin was significantly prejudiced in presenting his postconviction claims as a result of the delay. Deferring to the postconviction court's factual findings, we agree that Hardin has not demonstrated prejudice resulting from the delay sufficient to establish a due process violation.

¶ 23 Accordingly, because Hardin did not make an adequate showing of prejudice, we agree with the postconviction court that the proper remedy for this delay was to address the motion

---

[6] Initially, the prosecution charged Hardin with a single count of aggravated robbery for robbing three different men; this count gave rise to a potential duplicity objection. The jury, however, convicted Hardin of two separate counts of aggravated robbery and acquitted him of a third aggravated robbery count regarding Fisher; the three separate counts considered by the jury gave rise to a potential trifurcation objection.

posthaste, rather than to grant a new trial. *See People v. Valdez*, 178 P.3d 1269, 1279 (Colo. App. 2007).

¶ 24 Although we conclude that Hardin received the proper remedy for the twelve-year delay, we emphasize that the conduct that precipitated this lengthy delay is unacceptable in a legal system that is designed to provide criminal defendants with reasonably prompt resolutions of their postconviction motions. Under different circumstances, such a delay in postconviction proceedings could give rise to a cognizable due process violation. *Cf. Burkett*, 5 A.3d at 1275-80 (analyzing a potential due process violation under the *Barker* test in the context of postconviction proceedings).

### III. Motion for Postconviction Relief

¶ 25 Hardin argues that the postconviction court erroneously denied his motion for postconviction relief. We disagree.

### A. Sufficient Factual Findings and Legal Conclusions

¶ 26 Hardin asserts that the postconviction court abused its discretion by not making findings of fact or conclusions of law as to whether his trial counsel was ineffective in failing to object to the duplicity or the trifurcation of the aggravated robbery charge. Had trial counsel properly objected and had the charge not been

trifurcated, Hardin argues, the jury likely would have been unable to reach a unanimous verdict or would have acquitted him of aggravated robbery and felony murder. At the very least, Hardin asserts, this would have preserved the issue and allowed his success on direct appeal. Consequently, Hardin asks us to remand for further proceedings on this issue. We are unpersuaded.

1. Preservation, Standard of Review, and Applicable Law

¶ 27    The parties agree that this issue has been properly preserved.

¶ 28    In a Crim. P. 35(c) proceeding, a conviction is presumed valid and the defendant bears the burden of proving his or her entitlement to postconviction relief. *Dunlap*, 173 P.3d at 1061. We defer to a postconviction court's findings of fact if they are supported by the record, and we review its conclusions of law de novo. *See id.* at 1063.

¶ 29    To succeed on an ineffective assistance claim, a defendant must show that counsel's performance was constitutionally deficient and that this deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Dunlap*, 173 P.3d at 1062. To satisfy the performance prong, the defendant must show that counsel's representation fell below an objective

13

standard of reasonableness.  *Dunlap*, 173 P.3d at 1062.  To satisfy the prejudice prong, the defendant must show that there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different.  *Id.* at 1063; *People v. Washington*, 2014 COA 41, ¶¶ 21-29.  If a court determines that a defendant has failed to prove either prong of the *Strickland* test, it may deny the claim on that ground without addressing the other prong.  *Strickland*, 466 U.S. at 697; *see also People v. Naranjo*, 840 P.2d 319, 324 (Colo. 1992).

¶ 30     When resolving a motion pursuant to Crim. P. 35(c), a court must make findings of fact and conclusions of law sufficient to explain the basis of its ruling.  *People v. Rodriguez*, 209 P.3d 1151, 1157 (Colo. App. 2008), *aff'd*, 238 P.3d 1283 (Colo. 2010).  To constitute an abuse of discretion, the postconviction court's decision must be shown to be manifestly arbitrary, unreasonable, or unfair.  *See People v. White*, 55 P.3d 220, 223 (Colo. App. 2002).  A court's failure to exercise discretion can be an abuse of discretion. *People v. Darlington*, 105 P.3d 230, 232 (Colo. 2005).

## 2.    Analysis

¶ 31    Because the postconviction court made factual findings regarding the lack of prejudice Hardin suffered as a result of *any* alleged ineffective assistance of trial counsel, we defer to those findings and conclude that Hardin has not satisfied the prejudice prong of the *Strickland* test.  As a result, we see no need to remand for further proceedings on this issue, and we affirm.

¶ 32    In its order denying Hardin's motion, the postconviction court made extensive findings, supported by the record, as to the strength of the prosecution's case and the challenges Hardin had to overcome.  The postconviction court placed the numerous ineffective assistance allegations Hardin made in seeking postconviction relief into three groups, and it addressed some allegations generally and the rest specifically.  Finally, the court concluded that "none of the claimed instances of . . . ineffectiveness would, separately or together, likely have had any impact on the outcome of this case."

¶ 33    Moreover, a division of this court found that Hardin had "failed to demonstrate any prejudice resulting from the manner in which the aggravated robberies were charged," in part because of the trial

15

court's uncontested power to allow constructive amendments or variances of a criminal information at any time before the verdict. *See Hardin I,* slip op. at 6. We find no support in the record for Hardin's speculative assertions that the trial court (1) would have likely refused to allow the amendment or variance upon objection or (2) abused its discretion in allowing this amendment or variance regardless of whether trial counsel made the desired objection.

¶ 34     We conclude that, although the postconviction court only addressed some of Hardin's arguments specifically, it addressed all of his arguments at least generally. Consequently, we conclude that, whether implicitly or expressly, the postconviction court denied all of Hardin's arguments. *Cf. Bd. of Cty. Comm'rs v. Kobobel,* 74 P.3d 401, 404 (Colo. App. 2002) ("When a trial court does not rule on a motion, it may be considered implicitly denied or such failure to rule may be considered harmless error.") (citation omitted).

¶ 35     We therefore determine that the postconviction court's findings of fact and conclusions of law sufficiently provided the basis of its ruling — namely, that Hardin had failed to satisfy the prejudice prong of *Strickland. See People v. Breaman,* 939 P.2d 1348, 1352

(Colo. 1997); *see also People v. Chipman*, 2015 COA 142, ¶¶ 88-85 (concluding that the postconviction court's order was sufficient to set forth the basis of its denial of a Crim. P. 35(c) motion where the order was merely a motion from the prosecution asking the court to deny the defendant's motion with the word "granted," the judge's initials, and the date written on it). The postconviction court's lack of specific factual findings on the arguments at issue, accordingly, did not constitute an abuse of discretion.

¶ 36    Finally, assuming without deciding that trial counsel's failures to object constituted ineffective assistance, we defer to the postconviction court's factual findings, and we determine that Hardin has not satisfied the prejudice prong of the *Strickland* test. *See Strickland*, 466 U.S. at 697.

### B.    Waiver of the Right to Testify

¶ 37    Lastly, Hardin contends that the postconviction court erred in finding that he validly waived his right to testify at trial. Hardin notes that he initially expressed his desire to testify after the trial court's first advisement regarding his right to testify. Later that same day, however, Hardin decided not to testify. Hardin claims that trial counsel improperly interfered with his right to testify.

Also, according to Hardin, the trial court's second advisement, which incorporated the initial advisement by reference and was made after he changed his mind about testifying, was insufficient. Therefore, he argues, his waiver was not voluntary, knowing, or intelligent.

### 1. Preservation, Standard of Review, and Applicable Law

¶ 38 The parties agree that this issue has been properly preserved.

¶ 39 In a Crim. P. 35(c) proceeding, a conviction is presumed valid and the defendant bears the burden of proving his or her entitlement to postconviction relief. *Dunlap*, 173 P.3d at 1061. We defer to a postconviction court's findings of fact if they are supported by the record, and we review its conclusions of law de novo. *See id.* at 1063. The postconviction court determines the weight and credibility to give to the testimony of witnesses at a Crim. P. 35(c) hearing. *See id.* at 1061-62.

¶ 40 To be valid, a defendant's waiver of the right to testify must be knowing, voluntary, and intelligent. *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984), *modified, People v. Blehm*, 983 P.2d 779 (Colo. 1999). To this end, a trial court should advise the defendant outside the presence of the jury that (1) the defendant has the right

18

to testify; (2) if he or she wants to testify, no one can prevent him or her from doing so; (3) if the defendant testifies, the prosecution will be allowed to cross-examine him or her; (4) if the defendant has been convicted of a felony, the prosecutor will be entitled to ask about it; and (5) if the felony conviction is disclosed to the jury, the jury can be instructed to consider it only as it bears on the defendant's credibility. *Id.* at 514-15. Regardless of whether the trial court's *Curtis* advisement contained the requisite five elements, the essential task before the postconviction court is to determine whether the defendant's waiver of the fundamental constitutional right to testify was knowing, voluntary, and intelligent. *Moore v. People*, 2014 CO 8, ¶ 22.

### 2. Analysis

¶ 41 We conclude that the postconviction court rightly determined that Hardin validly waived his right to testify.

¶ 42 The record supports the postconviction court's findings that the trial court initially gave Hardin a proper *Curtis* advisement that included the five requisite elements and that, in turn, Hardin gave coherent responses. During the second *Curtis* advisement, given after Hardin decided not to testify, the trial court incorporated the

19

initial advisement that it had given mere hours earlier and reiterated that Hardin had the right to testify in spite of his attorney's advice to the contrary. Hardin's responses show that he remained firm in his decision to forgo testifying. We defer to the postconviction court's factual findings and agree that Hardin's waiver was voluntary, knowing, and intelligent. *See Dunlap*, 173 P.3d at 1063.

¶ 43 Additionally, the record supports the finding that, although trial counsel strongly advised Hardin against testifying, trial counsel did not "intimidate" Hardin or otherwise improperly interfere with his ability to choose whether to testify. The postconviction court found trial counsel's related testimony at the evidentiary hearing more credible than Hardin's. We may not disregard this credibility determination. *See id.* at 1061-62.

¶ 44 Therefore, we agree that Hardin's waiver was valid, and we affirm.

## IV. Conclusion

¶ 45 The order is affirmed.

JUDGE BERNARD and JUDGE RICHMAN concur.

20