21CA1940 Peo v Sais 10-31-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 21CA1940
Pueblo County District Court No. 19CR540
Honorable Thomas B. Flesher, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeffrey Kelvin Sais,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Brown and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, River B. Sedaka, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jeffrey Kelvin Sais, appeals his convictions for sexual assault and kidnapping. We affirm.

## I.     Background

¶ 2     One afternoon in April of 2017, A.S. got into an argument with a friend she was visiting in Pueblo and decided to go to another friend's apartment. A.S. was upset, her phone was dead, and she had been unable to get a ride, so she decided to walk. On her way, she passed Sais standing on a sidewalk near an alley. As she approached where Sais was standing, he asked A.S. for a cigarette. While A.S. was searching in her purse for a cigarette, Sais grabbed her by the arms, forced her down the alley, and into an abandoned shed. In the shed, Sais forced A.S. on to a mattress on the floor, pulled a hatchet from his pants and laid it on the floor next to her, and sexually assaulted her. Sais fled the scene.

¶ 3     After Sais left, A.S. dressed, gathered her belongings, and went to a nearby 7-Eleven. There, she called the police and then called her sister to take her to the hospital. According to A.S.'s sister, A.S. was very distraught, shaking, and crying when she got to her. The police met A.S. at the hospital, and she gave them an account of what had happened despite being distraught and in physical pain.

A nurse interviewed A.S., conducted a physical examination, and took DNA samples from her. The nurse reported that A.S. had a vaginal tear and abrasions on both of her knees.

¶ 4 Several weeks later, A.S. accompanied a detective to the location where the assault had occurred. They drove around different streets in the area until A.S. recognized the shed where she had been assaulted. She was crying and scared after they found the location. In January of 2018, after she had moved to Las Vegas, A.S. met with a detective who showed her pictures of six different men. A.S. wrote a note on the picture of Sais stating that she was 100% sure that he was the man who had raped her and signed it. In 2019, Sais was charged with sexual assault and kidnapping.

¶ 5 At the first trial Sais endorsed a general denial defense. But, during opening argument defense counsel began explaining that the evidence would show that A.S. had consented to the sexual encounter in exchange for money. The prosecution objected to this line of argument, claiming that Sais was required, but had failed, to give the prosecution notice of a consent defense, which the prosecutor had argued was required by Criminal Procedure Rule

16(II)(c). After hearing extensive argument about whether pretrial endorsement of a consent defense was required, the trial court eventually agreed that disclosure was required and hadn't been given. As a remedy for failing to disclose, the court limited Sais's ability to present his consent defense. Due to these restrictions, Sais requested a mistrial. After the prosecution agreed, the court granted Sais's request.

¶ 6 Before the second trial, Sais endorsed a consent defense in which he claimed A.S. had agreed to have sex with him for money, and only after he refused to pay her did she claim that he had kidnapped and sexually assaulted her. Based on this defense, Sais argued that the jury should convict him of patronizing a prostitute instead of kidnapping and sexual assault.

¶ 7 Ultimately, the jury convicted Sais of sexual assault and kidnapping and rejected his requested prostitution charge.

## II.  Issues on Appeal

¶ 8 Sais argues that the trial court committed reversible error when it (1) determined he committed a discovery violation and thereafter granted his request for a mistrial, (2) allowed A.S. to testify regarding her own credibility, and (3) refused to give a

contemporaneous limiting instruction to the jury during Sais's testimony. Lastly, he argues that cumulative error requires reversal. We address, and reject, each contention in turn.

## A. The Mistrial

¶ 9 Sais first argues the court erred when it ruled that he was required to give the prosecution notice of his intent to present a consent defense and that this error forced him to choose between his right to present the consent defense and his right to a speedy trial and against double jeopardy. Sais argues that the court's discovery ruling during the first trial put him in a lose-lose situation and, as a result, his request for a mistrial was made under duress.

### 1. Additional Facts

¶ 10 At the first trial, after concluding that Sais was required to disclose his consent defense, the trial court restricted his ability to present the defense. The court precluded Sais from explicitly arguing that A.S. had consented or using the word "consent." Notably, the trial court ruled that it would allow Sais to testify to his belief that A.S. had agreed to sex in exchange for payment and would allow Sais to argue that the prosecution had not proven all the elements of the charged crimes. When the prospect of a mistrial

as a remedy for the discovery violation was first raised, the court made it clear that it would not grant a mistrial unless both Sais and the prosecution agreed to a mistrial.

¶ 11    Thereafter, Sais requested a mistrial — twice.  First:

> [Defense Counsel]:  Given the Court's ruling, I think we have to request a mistrial, for [Defendant's] benefit.  I understand that the Court of Appeals could reverse this decision. But [Defendant] is, you know, if he's convicted, is waiting for that to happen. . . .

¶ 12    And again:

> [Prosecutor]:  Your Honor, I think at this point, under [section] 18-1-301, [C.R.S. 2024,] if the Defense consents to termination, which them moving to mistrial I think is them consenting to termination and mistrial here, we will also consent to a mistrial.
>
> . . . .
>
> THE COURT:  [Defense Counsel], is that your request, then?
>
> [Defense Counsel]:  Yes, given the Court's ruling, I think it is.

### 2.    Standard of Review and Relevant Legal Principles

¶ 13    We review a trial court's discovery rulings and the sanctions it fashions as a remedy for an abuse of discretion.  *See People v. Mendes*, 2017 COA 129, ¶ 32.  Section 18-1-301(2)(a) provides that

termination is not improper when a "defendant consents to the termination or waives his right to object to the termination."

¶ 14 "[I]f a criminal trial is terminated before a verdict, guarantees against double jeopardy will bar a second trial *unless the defendant consented to the termination* or it was manifestly necessary." *Paul v. People*, 105 P.3d 628, 633 (Colo. 2005) (emphasis added) (citation omitted). "[A] waiver occurs whenever the defendant fails to register an objection on the record, contemporaneously with the court's order." *Id.*

### 3. Analysis

¶ 15 Sais argues that because the trial court erroneously concluded that he was required to disclose his consent defense to the prosecution, his motion for a mistrial was coerced and retrial was barred. However, because Sais requested the mistrial without preserving the double jeopardy and speedy trial arguments he raises on appeal, and that mistrial cured any prejudice from the court's discovery ruling, we discern no basis for reversal.

¶ 16 Sais describes his request for a mistrial as coerced because he was forced to choose between a mistrial and his right to present a defense. We reject this contention.

¶ 17     Regardless of the propriety of the court's discovery ruling, Sais could have litigated the case. The court's discovery ruling at the first trial would have allowed Sais to testify to his belief that A.S. had consented to sex and to argue that the prosecution had not proved all the elements of the charged crimes. If acquitted, Sais would have been protected by double jeopardy. If he was found guilty, Sais could have then appealed the trial court's discovery ruling. This was an available alternative to moving for a mistrial. Thus, we aren't persuaded that his request was coerced or made under duress, regardless of the merits of the trial court's discovery ruling.

¶ 18     Moreover, a party waives their right to appeal based on a mistrial if they don't object on the record when the court orders the mistrial. *Id.* Not only did Sais not object to the mistrial — he requested it twice. If the absence of a contemporaneous objection to a mistrial can qualify as a waiver, then certainly requesting one twice without an objection serves as a clear waiver. Because we reject Sais's claim that his requests for a mistrial were coerced, those requests for a mistrial waived his other options for a remedy.

¶ 19   Accordingly, we need not decide whether the trial court erred in determining that Sais was required to disclose his consent defense. Simply put, the granting of his motion for a mistrial extinguished any challenge he may have had to the court's discovery ruling, and he may not revive that challenge here by recasting his motion for a mistrial as coerced.

## B.   Improper Bolstering

¶ 20   During A.S.'s redirect, Sais objected to testimony that he argues improperly bolstered her credibility. The People counter that improper bolstering only occurs when one witness comments on the credibility of another witness and that A.S. was not commenting on her credibility but clarifying why her accounts over the years differed.

### 1.   Additional Facts

¶ 21   During cross-examination of A.S., Sais's counsel vigorously challenged discrepancies in the different accounts she had given during the years-long investigation and the first trial (which was referred to as a "hearing" during the second trial). In response, on redirect the prosecutor questioned A.S. as follows:

[Prosecutor]. If I asked you today to tell me verbatim what you said in July of 2019, the first time you testified in this case, could you tell me?

A. No.

[Defense Counsel]: Objection, relevance.

THE COURT: Overruled.

Q. ([Prosecutor]) Okay. Do you have the independent memory of what you said back then?

A. No.

Q. Do you remember the events of April 7th, 2017?

A. Yes.

Q. To the best of your recollection, have you testified of those events as you remembered them?

[Defense Counsel]: Objection, this is asking the witness to --

THE WITNESS: Yes.

[Defense Counsel]: -- testify about her own veracity.

THE COURT: Overruled.

Q. (By [Prosecutor]) To the best of your recollection of the events of April 7th, 2017, have you testified as you remember those events today?

9

A. Yes.

2. Standard of Review and Relevant Legal Principles

¶ 22   "We review a trial court's evidentiary decisions for an abuse of discretion."  *Venalonzo v. People*, 2017 CO 9, ¶ 15.  To be an abuse of discretion, a ruling must be manifestly arbitrary, unreasonable, or unfair, or based on a misunderstanding or misapplication of the law.  *People v. Heredia-Cobos*, 2017 COA 130, ¶ 6.  We review questions of law de novo.  *People v. Clark*, 2015 COA 44, ¶ 180.

¶ 23   Witnesses may not testify that another witness is telling the truth or lying.  *Venalonzo*, ¶ 32.  Eliciting "testimony *from the victim* about the truthfulness of her *own* testimony . . . does not constitute bolstering as discussed in . . . *Venalonzo*."  *People v. West*, 2019 COA 131, ¶ 42.

3. Analysis

¶ 24   Sais argues that the court erred by allowing A.S.'s testimony because doing so allowed her to improperly bolster her own credibility by commenting on her own truthfulness.  We reject his argument for two independent reasons.

¶ 25   First, A.S.'s testimony — while perhaps relevant to her own truthfulness — wasn't a statement explicitly claiming that she told

10

the truth on a particular occasion. Instead, A.S. was clarifying the basis for her testimony, i.e. that it was based on her memory of the events of the attack, and not her previous statements to investigators.

¶ 26    Second, even if we agreed with Sais's contention that A.S.'s answers were an explicit attempt to comment directly on the veracity of her own testimony, we discern no error. It's true that witnesses may not comment on the veracity of another witness's testimony, *Venalonzo*, ¶ 32, but that prohibition doesn't reach a witness's testimony regarding her own truthfulness, *West*, ¶ 42.

¶ 27    In *West*, the defendant was convicted of sexual assault on a child, contributing to the delinquency of a minor, and a drug felony. *West*, ¶ 1. On appeal, West challenged a part of the victim's testimony from the trial as being improper bolstering of her own testimony. Specifically, the victim in *West* testified, as follows:

> Q.  [W]hen you first sat down today, the judge asked you about -- to raise your hand and to talk about telling the truth today. Do you recall him asking you that?
>
> A.  Yes.

11

Q. Okay. When, um, you came in here before, did I talk to you as well about the -- about what's the number one rule about testifying?

A. Yes.

Q. What's the number one rule?

A. Tell the truth.

Q. Okay. Is that what you have done today while you've been here testifying?

A. Yes.

*Id.* at ¶¶ 34-35.

¶ 28    The division in *West* concluded that the court did not err by allowing this testimony because the witness wasn't commenting on the truthfulness of another witness but only on her own veracity. *Id.* at ¶¶ 42, 44. Just as in *West,* A.S. didn't comment on the veracity of any other witness's testimony but only indirectly on her own truthfulness.

¶ 29    Indeed, the conclusion in *West* makes good sense, since such testimony would, at worst, be a reaffirmation of the oath that every witness takes in the presence of the jury to testify truthfully. Accordingly, we discern no error in the court's decision to allow A.S.'s testimony.

## C.    The Limiting Instruction

¶ 30    Sais argues the court erred by not granting his request for a contemporaneous limiting instruction when information about several previous felony convictions was elicited during his testimony.  The People argue the instruction was not required to be read at the same time Sais's convictions were introduced and, in the alternative, that any error was harmless.

### 1.    Additional Facts

¶ 31    Sais's convictions were going to be introduced by the prosecution in order to impeach his credibility.  He requested the court give a specific limiting jury instruction at the end of trial and contemporaneously read the instruction when Sais was asked about his previous convictions.  The court agreed to distribute the jury instruction at the end of trial.  The following colloquy captures the court's decision not to contemporaneously read the instruction:

> THE COURT: . . .  [I]t sounds to me like you're asking that I read a limiting instruction before he testifies?
>
> [Defense Counsel]:  My request would be contemporaneous to when the question is asked, when the felony conviction is elicited.
>
> THE COURT: . . .  I think, certainly, it is appropriate to give that instruction to the jury,

13

as part of the jury instructions.  But I don't know, necessarily, that I'm required to give it as a limiting instruction while he testifies or before he testifies.  Do you have a case that says that that's -- the Court should handle it that way?

[Defense Counsel]:  I don't have a case that says the Court has to do it that way, that is just my request.

THE COURT:  Okay.  Do you have a position on that, [Prosecutor]?

. . .

[Prosecutor]:  I think it is appropriate -- it is definitely appropriate to give it in the jury instructions.  That's required under COL-JI, I believe.  I don't think it is appropriate to give it as a limiting instruction.

THE COURT:  Okay.  And I'm going to — that's the way I'm going to approach it, [Defense Counsel].

¶ 32     Sais's counsel questioned him about the previous convictions on direct, and then the prosecution asked him about the convictions again on cross-examination.  After Sais's testimony, the defense did not call any more witnesses and rested.  The court adjourned for lunch, and upon resuming proceedings the court gave the jury instructions to the jury, including Sais's requested instruction.

14

## 2.    Standard of Review

¶ 33    We review a trial court's decision not to give a jury instruction for an abuse of discretion. *People v. Payne*, 2019 COA 167, ¶ 16. Where error exists and the defendant objects to a jury instruction, we review for harmless error. *McDonald v. People*, 2021 CO 64, ¶ 55. An error is harmless if there is not a reasonable probability that it contributed to the conviction. *Id.*

## 3.    Analysis

¶ 34    Sais argues that a court must grant a defendant's request for a contemporaneous limiting instruction when the defendant's prior convictions are being introduced. Sais grounds his argument that a limiting instruction is required upon request by pointing out that Colorado statutes and case law require limiting instructions in other similar contexts where prior convictions or bad acts are introduced. For example, Sais argues that when prior bad acts are introduced under CRE 404(b), if a defendant requests a contemporaneous limiting instruction, then the court must give one. *Rojas v. People*, 2022 CO 8, ¶ 27. We disagree that such an instruction is *required* in the circumstances before us.

15

¶ 35    To begin, all the authorities Sais cites for the proposition that a contemporaneous limiting instruction is required upon request arise in a context where a statute or rule requires the giving of such an instruction. *See id.* (limited to CRE 404(b) evidence); § 16-10-301(4)(d), C.R.S. 2024 (limited to sexual offenses); § 18-6-801.5(5), C.R.S. 2024 (limited to domestic violence). Sais requests that we extend the requirement in other contexts to this one, but without explicit requirements by statute or legal precedent, we decline Sais's invitation to adopt such a categorical obligation.[1] *Cf. People v. Brown*, 2019 CO 50, ¶ 17 (where a statute is silent on an issue, it is not the role of the courts to add language to the statute). Doing so is the prerogative of the legislature or the supreme court, and we decline to do so for the first time here. *Cf. Nat'l Farmers Union Prop. & Cas. Co. v. Estate of Mosher*, 22 P.3d 531, 534 (Colo. App. 2000) ("We are not at liberty to read additional terms into, or to modify, the plain language of a statute, particularly where, as here, the

---

[1] While we conclude that a contemporaneous instruction isn't *required*, it seems that granting such a request is certainly best practice, absent a compelling countervailing reason.

16

General Assembly has elsewhere enacted the very limitation urged upon the court.") (citations omitted).

¶ 36    Next, Sais argues that even if giving a contemporaneous limiting instruction is discretionary, the trial court failed to exercise any discretion because the court declined to give the instruction simply because it wasn't *required* to give such an instruction. This, he says, is a failure to exercise discretion. *See People v. Hardin*, 2016 COA 175, ¶ 30. Assuming without deciding that doing so was an abuse of discretion, we conclude any such error is harmless for four reasons.

¶ 37    First, the jury did ultimately receive the requested instruction, and we presume that jurors follow the instructions given to them. *Johnson v. People*, 2019 CO 17, ¶ 16. Second, there was little time between when both sides questioned Sais about his prior convictions and the jury's receipt of the limiting instruction. Sais was the final witness and following his testimony, and without a substantial passage of time, the court read aloud and distributed the written jury instructions, which contained the requested instruction. Third, both Sais and the prosecution referenced the limited purpose of the convictions correctly in their closing

arguments. And finally, the prosecution never made a propensity argument with the convictions or otherwise took advantage of the lack of a contemporaneous limiting instruction. *See People v. Coughlin*, 304 P.3d 575, 586 (Colo. App. 2011) (holding that it was not error for a court not to give an instruction where a general credibility instruction was given and where neither party took advantage of the lack of instruction during their closing argument).

¶ 38 The combination of these factors convinces us that the admission of the previous convictions without a contemporaneous limiting instruction did not contribute to the jury's decision to convict Sais of sexual assault and kidnapping. Accordingly, we conclude that any potential error in not giving the limiting instruction contemporaneously with Sais's testimony was harmless.

### D. Cumulative Error

¶ 39 Finally, Sais argues that the cumulative prejudice of multiple claimed errors is sufficient to overturn his convictions.

¶ 40 To put it simply, cumulative error presumes cumulative prejudice. *Howard-Walker v. People*, 2019 CO 69, ¶ 25. Therefore, "a single error is insufficient to reverse under the cumulative error standard." *People v. Thames*, 2019 COA 124, ¶ 69.

¶ 41     Because we could discern only one potential error — the failure to give the contemporaneous limiting instruction — there is no possibility for cumulative error or any basis for reversal. Accordingly, we reject Sais's argument that the combined errors of the trial court deprived him of a fair trial.

### III.   Disposition

¶ 42     The judgment is affirmed.

JUDGE BROWN and JUDGE MOULTRIE concur.