22CA1455 Peo v Watkins 05-29-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1455
City and County of Denver District Court No. 13CR2776
Honorable Brian R. Whitney, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jamal Watkins,

Defendant-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE YUN
Tow and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Jamal Watkins appeals the postconviction court's order denying his Crim. P. 35(c) motion after an evidentiary hearing. Watkins contends that his trial counsel provided ineffective assistance by failing to (1) introduce evidence of a threat made by the victim in the courtroom and (2) cross-examine a witness to attack his credibility. We disagree with these contentions and therefore affirm the postconviction court's order.

## I.    Background

¶ 2    Watkins and the victim were best friends growing up who did "[e]verything" together — "good and bad." That changed in late 2009 when the victim provided a tip to the police identifying Watkins as a suspect in a nightclub shooting. The victim learned that a recording of his police call "was being passed around the neighborhood" and that Watkins had heard the recording. From then on, the victim was "classified as a snitch" and feared that "Watkins was after him."

¶ 3    Three and a half years later, in May 2013, at least two individuals entered the victim's apartment in the early morning. The victim was in the bathroom when he heard a thump; turning around, he saw Watkins standing in the bathroom doorway with a

1

gun. Watkins said, "You snitch. You bitch. I found you." As Watkins raised the gun, the victim heard another voice say, "Don't shoot." The victim reached up to block the gun, and the first shot went through his hand. He slammed the bathroom door shut, dropped to the floor, and screamed as several more shots were fired through the door to make the shooter think they were hitting him. The intruders eventually left, and the victim called 911.

¶ 4 Watkins was charged with, as relevant here, attempted first degree murder, witness retaliation, and first degree assault. A jury acquitted him of attempted first degree murder but convicted him of witness retaliation and first degree assault, and the trial court sentenced him to twenty-eight years in prison.

¶ 5 Watkins appealed, and a division of this court affirmed. He then moved for postconviction relief under Crim. P. 35(c), raising claims of ineffective assistance of counsel. After holding an evidentiary hearing, the postconviction court denied Watkins's claims.

## II. Standard of Review and Governing Law

¶ 6 A postconviction court's ruling on a Crim. P. 35(c) motion after an evidentiary hearing presents a mixed question of fact and law.

2

*People v. Sharp*, 2019 COA 133, ¶ 12.  We review the court's legal conclusions de novo but defer to its findings of fact unless they are clearly erroneous, meaning that they have no support in the record. *People v. Smith*, 2024 CO 3, ¶ 16.  "The postconviction court determines the weight and credibility to give to the testimony of witnesses at a Crim. P. 35(c) hearing."  *People v. Hardin*, 2016 COA 175, ¶ 39.

¶ 7     To establish a claim of ineffective assistance of trial counsel, a defendant must show that (1) trial counsel's performance was deficient and (2) counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003).  An ineffective assistance claim fails if the defendant does not satisfy either prong.  *Strickland*, 466 U.S. at 697.

¶ 8     To establish deficient performance, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness."  *Id.* at 687-88.  "[J]udicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide

3

range of reasonable professional assistance." *Ardolino*, 69 P.3d at 76.

¶ 9     To establish prejudice, in turn, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### III.     Courtroom Threat

¶ 10     Watkins contends that the postconviction court erred by finding that his trial counsel's representation was neither deficient nor prejudicial when counsel failed to develop and introduce evidence of a threat made by the victim in the courtroom. We disagree that the postconviction court erred by finding no prejudice under *Strickland.*

### A.     Additional Background

¶ 11     After the victim testified at trial, the court announced a brief recess. As both the victim and the jury were leaving the courtroom, two spectators in the gallery — Watkins's mother and the woman sitting next to her, whose children had also grown up with the

victim and Watkins — had a noticeable reaction. The court admonished them, "[I]f you so much as gesture or do anything again in the presence of this jury, you will be removed from the courtroom and not allowed back in."

¶ 12 After the recess but before the jury returned, defense counsel explained the women's reaction to the court. He informed the court, "[A]s [the victim] was exiting the courtroom, he made a statement to Mr. Watkins' mother and the woman who was sitting next to Mr. Watkins' mother and that statement contained a threat. . . . [H]e apparently said, 'You stupid bitch, I'm going to kill you.'" The court asked if it was "being requested to do anything," and defense counsel said that he was "not requesting the [c]ourt to do anything but . . . just wanted to make a record."

¶ 13 In his Crim. P. 35(c) motion, Watkins argued that defense counsel performed deficiently and prejudiced his case by failing to make any effort to bring the victim's courtroom threat to the jury's attention. Specifically, Watkins argued that defense counsel should have (1) recalled the victim and cross-examined him about "whether he had just threatened to kill one or more spectators" and (2) called the two women to testify about the threat. (At the postconviction

5

hearing, both women testified that the victim threatened to kill them as he left the courtroom.) And by failing to introduce evidence of the threat, Watkins argued, defense counsel missed an opportunity to attack the victim's credibility by contradicting the victim's portrayal of himself as having given up criminal behavior.

¶ 14 The postconviction court found that Watkins had demonstrated neither deficient performance nor prejudice.

## B. Discussion

¶ 15 Even if we assume that defense counsel performed deficiently when he did not attempt to introduce evidence of the threat, we conclude that the postconviction court's findings on the second prong of *Strickland* are supported by the record.

¶ 16 The victim testified that, although he used to "get into trouble" in his "youth days" and had a felony conviction for attempted robbery, he had changed his ways. After the birth of his son, he explained, he gave up "the gang banging and all the wrong that [he] was doing." In light of this testimony, Watkins argues, evidence of the victim's courtroom threat would have undermined the victim's credibility by "impeach[ing] his claim that he was a reformed man."

6

¶ 17    But the postconviction court found that evidence of the threat would not have had a significant "impact" on the outcome of the trial because it was already apparent that the victim's rehabilitation was not "complete." The record supports the postconviction court's finding. Specifically, during direct examination, the victim testified that he initially did not want to tell the police who shot him because he "fell back into [his] old ways" and wanted to "take it into [his] own hands" by killing Watkins himself. We thus agree with the postconviction court that evidence of the threat would not have had a significant impact on the trial.

¶ 18    Nor are we persuaded by Watkins's argument that evidence of the threat would have undermined the victim's credibility by showing that the victim was biased against Watkins and thus was motivated to falsely identify him as the shooter. At the postconviction hearing, both Watkins's mother and the woman seated next to her testified that the victim's threat was directed at them. Had defense counsel argued that the threat was against Watkins's mother and that it reflected animus against Watkins, this would have been consistent with the victim's own testimony that he "wanted to kill" Watkins for shooting him.

¶ 19     And had defense counsel argued that the threat was against the other woman, Watkins does not explain why any animus the victim felt toward her would have motivated him to falsely accuse Watkins.

¶ 20     We thus conclude that, even if defense counsel performed deficiently, the postconviction court did not err by finding that there is no reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *See Strickland,* 466 U.S. at 694.

## IV.   Witness's Credibility

¶ 21     Next, Watkins contends that the postconviction court erred by finding that his trial counsel did not perform deficiently when he failed to cross-examine a witness and challenge his credibility.  We are not persuaded.

### A.    Additional Background

¶ 22     The witness was a longtime friend of Watkins's who lived in the same apartment complex as the victim and spoke with police after the shooting.  After expressing serious reservations about cooperating with the investigation, the witness told a detective that Watkins came over to his apartment at about 4 a.m. on the morning

of the shooting.  Approximately two hours later, Watkins left the witness's apartment and met up with two other people who were standing outside.  The witness saw Watkins climb onto the balcony of the victim's apartment while the other two walked up the stairs.  He heard several gunshots and then saw the group run from the area.

¶ 23     At trial, the witness recanted his statements to the detective.  He denied ever saying that Watkins was at his apartment on the morning of the shooting or that he saw Watkins climb onto the victim's balcony.  He testified that he "had a bad habit of smoking spice [and] was up getting high" that morning when he heard gunshots, but he otherwise claimed to know nothing about the shooting.  He said that he had never wanted to be involved in the case, that he only spoke with the police because he was on parole and they "made [him]," and that he had never said anything implicating Watkins.  Defense counsel chose not to cross-examine the witness.  The detective then testified to the witness's prior inconsistent statements.

¶ 24     In his Crim. P. 35(c) motion, Watkins argued that defense counsel performed deficiently by failing to cross-examine the

witness to "impeach [him] with his extensive criminal history." Watkins argued that the lack of cross-examination prejudiced him because, although the witness recanted on the stand, his account of having seen Watkins climb onto the victim's balcony nonetheless came in through the detective.

¶ 25    At the postconviction hearing, defense counsel explained that he chose not to cross-examine the witness because, "when he testified and essentially recanted every statement that he had made up to that point, he had done as good a job at . . . undercutting his own previous statements as I could have done cross-examining him." The postconviction court found that defense counsel did not perform deficiently by declining to cross-examine the witness because

> the [witness's] testimony was harmful to the People's case. It is not surprising that no defense questions were asked of him, [since] to do so would have undermined a viable source of reasonable doubt. Similarly, to impeach his defense[-]positive testimony would have undermined rather than improved the defense case. . . . It is hard to determine how he could have been more helpful to [Watkins] if he had been . . . cross-examined.

## B. Discussion

¶ 26    We agree with the postconviction court that Watkins has not shown that defense counsel performed deficiently under *Strickland* by choosing not to cross-examine the witness.

¶ 27    During his direct examination, the witness explicitly denied saying that Watkins had been at his apartment on the morning of the shooting or that he saw Watkins climb onto the victim's balcony.  Under these circumstances, when attacking the witness's credibility could have weakened Watkins's case, defense counsel's decision not to cross-examine the witness was a reasonable trial strategy.

¶ 28    Further, the witness's credibility was already undermined by his testimony that he had a "bad habit of smoking spice," that he was high on the morning of the shooting, and that he was on parole at the time.  We thus cannot agree with Watkins that defense counsel's decision not to cross-examine the witness left counsel "with no evidentiary basis to argue that [the witness's] statements to the police lacked credibility."

¶ 29    We agree with the postconviction court that it was reasonable for defense counsel not to cross-examine the witness and that,

11

accordingly, Watkins has not demonstrated deficient performance under *Strickland.*

## V.    Disposition

¶ 30    The postconviction court's order is affirmed.

JUDGE TOW and JUDGE SULLIVAN concur.