24CA0020 Peo v Mamo 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0020
El Paso County District Court No. 12CR3842
Honorable Samuel A. Evig, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Louis Edward Mamo,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE WELLING
Grove and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Krista A. Schelhaas, Alternate Defense Counsel, Littleton, Colorado, for Defendant-Appellant

¶ 1    Defendant, Louis Edward Mamo, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief following an evidentiary hearing.  We affirm.

## I.    Background

¶ 2    The People charged Mamo with second degree murder, attempt to influence a public servant, and two counts of child abuse for shooting his wife in the head with a gun during an argument, fleeing while leaving his two young children locked in a bedroom, and then falsely telling the police that his wife had committed suicide.  Mamo's defense at trial was that he fired the gun by accident.  At the conclusion of the trial, a jury convicted Mamo of all counts.

¶ 3    The trial court sentenced Mamo to forty years in prison for second degree murder, two years in prison for attempt to influence a public servant, and two, one-year terms in jail for each of the child abuse counts.  The court ordered all of the sentences to be served consecutively.

¶ 4    Mamo appealed the judgment of conviction, and a division of this court affirmed the judgment but remanded the case for the trial court to correct a clerical error in the mittimus.  *People v. Mamo*,

(Colo. App. No. 13CA1478, Sept. 1, 2016) (not published pursuant to C.A.R. 35(e)). Mamo then filed a Crim. P. 35(b) motion for sentence reconsideration, which the trial court denied after a hearing.

¶ 5    Thereafter, Mamo filed a timely pro se motion for postconviction relief, raising two claims of ineffective assistance of trial counsel. The postconviction court appointed counsel, who filed two supplements to Mamo's pro se motion — the first supplemented the original claims raised in Mamo's pro se motion and the second raised two new claims of ineffective assistance of trial counsel. The prosecution responded, Mamo replied, and the court held an evidentiary hearing on the motion and supplements.

¶ 6    At the hearing, the postconviction court heard testimony from a defense psychiatrist, Mamo's two trial attorneys, the lead detective, and Mamo. After the hearing, the parties submitted written closing arguments. The court denied Mamo's motion and supplements in a detailed written order.

## II.    Discussion

¶ 7    Mamo contends that, contrary to the postconviction court's findings, the evidence at the postconviction hearing established that

his trial attorneys provided ineffective assistance by failing to (1) investigate and present mitigating evidence at sentencing and (2) engage in plea negotiations. We address and reject each of these contentions in turn.

### A. Applicable Law and Standard of Review

¶ 8 "A criminal defendant is constitutionally entitled to effective assistance from his counsel." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). To succeed on an ineffective assistance of counsel claim, the defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, meaning that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007). A postconviction court must reject an ineffective assistance of counsel claim if the defendant fails to demonstrate either deficient performance or prejudice. *See People v. Aguilar*, 2012 COA 181, ¶ 9.

¶ 9     We review the denial of a Crim. P. 35(c) motion after a hearing as a mixed question of fact and law. *People v. Corson*, 2016 CO 33, ¶ 25. We defer to the postconviction court's factual findings but review de novo the court's ultimate conclusions regarding performance and prejudice. *See Carmichael v. People*, 206 P.3d 800, 807-08 (Colo. 2009); *People v. Sharp*, 2019 COA 133, ¶ 12. The postconviction court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing. *People v. Hardin*, 2016 COA 175, ¶ 39. Accordingly, "[w]here the evidence in the record supports the findings and holding of the postconviction court that presided over an evidentiary hearing, the judgment will not be disturbed on review." *People v. Wardell*, 2020 COA 47, ¶ 27.

### B.     Abandoned Claims

¶ 10    As a threshold matter, any claims that Mamo raised in his postconviction motion and supplements but did not reassert in this appeal are abandoned. *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

## C. Mitigation at Sentencing

¶ 11 Mamo contends that his trial counsel was ineffective for failing to present sufficient mitigation evidence at sentencing. In particular, Mamo asserts that he suffered from significant childhood trauma and had a substance abuse disorder, and that there is a reasonable possibility that he would have received a less severe sentence if counsel had presented this information at sentencing.

¶ 12 At the evidentiary hearing, Dr. Leah Brar, a defense expert in forensic psychiatry, testified concerning several sources of trauma from Mamo's childhood. She testified that when Mamo was born, he was addicted to opiates and because his mother and father were unable to raise him, he was raised by his grandparents. Dr. Brar testified that when Mamo was a young child his grandmother died of bone cancer, he suffered a traumatic brain injury after accidently being hit in the head with a baseball bat, and he witnessed his father's girlfriend stab his father during an argument. She also testified that when Mamo's grandfather developed dementia, Mamo went to live with his father. During this time, Mamo's father lived with a woman who had a daughter Mamo's age. When the two

children would stay with the little girl's father, the girl's father sexually molested both of them.

¶ 13 Dr. Brar testified about Mamo's mental health history and substance abuse history. She explained the effects of the various substances Mamo was using at the time of the offense, as well as their interactions with one another, and opined that he was impaired by alcohol and had a "strong clinical suspicion" that he was also intoxicated by benzodiazepines.

¶ 14 Dr. Brar diagnosed Mamo with post-traumatic stress disorder, alcohol use disorder, benzodiazepine use disorder, cocaine use disorder, and cannabis use disorder, and she opined that if he had been evaluated around the time of the trial, he would have received these same diagnoses.

¶ 15 Mamo testified similarly to Dr. Brar concerning the trauma he experienced as a child. He testified that his trial attorneys never asked him about his childhood or background, but he did tell them about the substances he took at the time of the offense.

¶ 16 Mamo's trial attorneys testified that it wasn't yet the regular practice of their office to employ social workers to evaluate a client prior to sentencing, although it could happen under "extraordinary"

circumstances." Rather, the common practice at the time was to interview family members or request records, depending on the defendant's circumstances. Both of Mamo's attorneys recalled interviewing Mamo's family and one of his attorneys remembered requesting some of his records, although she couldn't recall which ones. His attorneys testified that it was their office's common practice at the time to have conversations about their client's background or childhood, although neither remembered doing so with Mamo.

¶ 17 Rejecting this claim, the postconviction court observed that although this mitigation evidence wasn't presented at the sentencing hearing, Mamo's attorneys did present some mitigating information through various witnesses and Mamo himself. The court also noted the trial court's focus on Mamo's prior domestic violence incidents involving his wife and the substantial aggravating factors about Mamo's conduct before, during, and after the homicide. Finding that there was "no evidence that more mitigation would have changed [the trial court's] focus" and "[n]othing presented could change those [aggravating] facts," the

postconviction court concluded that "even if the Defense presented [this] mitigation, it would not have mattered."

¶ 18 "An unreasonable failure to conduct a mitigation investigation can constitute the grounds for ineffective assistance of counsel." *Dunlap*, 173 P.3d at 1065. However, we agree with the postconviction court that there isn't a reasonable probability that the outcome of the sentencing hearing would have been different if trial counsel had presented mitigation relating to Mamo's childhood trauma and substance abuse at his sentencing hearing.

¶ 19 As the postconviction court noted, none of this mitigating information would have changed the aggravating facts the trial court relied upon in fashioning its sentence. The trial court noted the prior incidents of domestic violence, "which culminated in [the victim's] death." The trial court reflected that Mamo's actions after killing his wife — leaving his two young sons for hours locked alone in their room while their mother lay dead in the next room, taking only his dog with him — was "unconscionable and unimaginable." And the trial court questioned the sincerity of Mamo's expressions of remorse.

¶ 20    Moreover, the postconviction court relied on the testimony provided by one of Mamo's trial attorneys that the trial court was a "harsh" sentencer and they expected a harsh sentence if the jury found him guilty.  The record supports these findings.  Mamo's attorney testified that the trial court was on the "more severe" side of sentencing, and while the court was "fair," she expected "a harder sentencing" in a case like this, "where you have someone who's no longer with us."

¶ 21    Nor are we persuaded that the trial court was given "no opportunity" to consider any mitigation at the sentencing hearing.  The postconviction court found, and the record confirms, that the defense offered evidence and argument in favor of mitigation at the sentencing hearing.  Witnesses spoke on Mamo's behalf, Mamo expressed sorrow about what had happened, and his attorneys asked the trial court for a lenient sentence.  True, the trial court wasn't provided with the same mitigation that was presented at the Crim. P. 35(c) hearing.  But, as the postconviction court noted, no evidence was presented to suggest a reasonable probability that Mamo would have received a lesser sentence if this additional mitigation had been presented at sentencing.

¶ 22    Given the strength of the evidence against Mamo and the aggravating facts relied upon by the trial court, the evidence he presented at the Crim. P. 35(c) hearing wasn't sufficient to undermine our confidence in the outcome of his sentencing hearing.  Hence, there is no reasonable probability a different outcome would have occurred had trial counsel presented additional mitigation concerning his childhood trauma and substance abuse history.  Because we conclude that the postconviction court was correct in finding that Mamo failed to prove prejudice, it didn't err by denying this claim.

### D.    Plea Negotiations

¶ 23    Mamo contends that his trial attorneys failed to engage in plea negotiations and didn't provide his "substantial mitigation," which was presented at the Crim. P. 35(c) hearing, to the prosecutor to help secure a plea bargain.  He asserts that if counsel had engaged in plea negotiations as described, there is a reasonable probability that the prosecution would have made an offer more favorable than the sentence imposed, and that he would have accepted this offer.

¶ 24    The *Strickland* test applies to claims that defense counsel provided ineffective assistance in the plea-bargaining process.  *See*

*Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also People v. Delgado*, 2019 COA 55, ¶¶ 1, 7. And under certain circumstances, the failure to pursue plea negotiations may amount to deficient performance. *People v. Sherman*, 172 P.3d 911, 913 (Colo. App. 2006). But counsel doesn't provide ineffective assistance simply by failing to engage in plea negotiations. *Id.* Rather, a postconviction court must consider "the particular facts and circumstances of the case" to determine whether "counsel's failure to initiate plea negotiations fell below an objective standard of reasonableness." *Id.*

¶ 25    Mamo's trial attorneys testified that they didn't remember an offer or plea bargain in this case, rather, they recalled that Mamo "was pretty set on trial from the very beginning," he wasn't interested in talking about an offer, and this case "looked like a trial case pretty early on." His attorneys also testified that they both reviewed the file and didn't find any notes reflecting requesting or receiving an offer.

¶ 26    Mamo testified at the hearing that he "didn't want to go to trial" and wanted a plea disposition "more than anything." He testified that he "begged" his attorneys for a plea bargain, but they were dismissive of his request, telling him that the district attorney

11

"wasn't willing" to give him a plea offer and "being charged with second-degree murder was a deal in itself."

¶ 27 Weighing this conflicting testimony, the postconviction court concluded that "Mamo did not testify credibly on this point." It was the postconviction court's prerogative to weigh this conflicting testimony; we can't and won't second guess its conclusion. *See People v. Williams*, 908 P.2d 1157, 1161 (Colo. App. 1995) ("The weight and credibility to be given the testimony of witnesses in a Crim. P. 35(c) hearing is within the province of the trial court and when there is sufficient evidence in the record to support the court's findings, its ruling will not be disturbed on review.").

¶ 28 Further, the postconviction court found that the prosecution didn't extend an offer in this case and, "based on the strength of the evidence," it had "little incentive" to do so. This finding is also supported by the testimony at the evidentiary hearing. As previously discussed, the evidence against Mamo was strong, and trial counsel testified that they didn't recall, and their files didn't indicate that the prosecution ever made a formal plea offer. Because the postconviction court's findings are supported by the record, we defer to them. *See Corson*, ¶ 25. And if the prosecution

12

was unwilling to make an offer, trial counsel couldn't have performed deficiently by failing to engage in plea negotiations. *See Missouri v. Frye*, 566 U.S. 134, 148 (2012) ("[A] defendant has no right to be offered a plea, . . . nor a federal right that the judge accept it . . . .") (internal citations omitted).

## III. Disposition

¶ 29 The order is affirmed.

JUDGE GROVE and JUDGE JOHNSON concur.